UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| In re: | ) | **Case No. 24-30007-KAC** |
|---|---|---|
| | ) | Chapter 13 |
| Richard John Golinvaux, and | ) | |
| Renee Karen Golinvaux, | ) | *<u>**REQUEST FOR EXPEDITED RELIEF**</u>* |
| | ) | |
| | ) | **NOTICE OF HEARING AND** |
| | ) | **MOTION OF DEBTORS FOR ORDER** |
| | ) | **COMPELLING INTERNAL REVENUE** |
| | ) | **SERVICE TO RELEASE LIEN ON** |
| Debtors. | ) | **REAL PROPERTY, AND FOR ORDER** |
| | ) | **DECLARING LIEN TO BE SATISFIED,** |
| | ) | **AND FOR ORDER ENFORCING** |
| | ) | **SETTLEMENT, MEDIATION OR** |
| | ) | **COMPROMISE** |
| | ) | |

TO: United States of America; Internal Revenue Service; Gregory Burrell, Chapter 13 Trustee; U.S. Trustee; Minnesota Department of Revenue; Carrington Mortgage Services LLC, and any other parties entitled to notice.

1. The debtors in the above captioned chapter 13 case, Richard and Renee Golinvaux, through their attorney Craig W. Andresen, hereby move the court for the relief requested herein. The debtors give notice that they seek expedited relief from the bankruptcy court against the Internal Revenue Service pursuant to Minnesota Local Bankruptcy Rule 9006-1(d). The debtors request that the court order that the IRS release its lien, or that it otherwise file a satisfaction of its lien, upon the debtors' real property, and that the court order that such lien be considered fully satisfied, and that the IRS be compelled to release such lien by reason of its participation in a mediation which resulted in a settlement and a compromise, and that the Internal Revenue Service be required to abide by terms the confirmed chapter 13 plan which resulted from such mediation and settlement.

2. The court will hold a hearing on this motion before the Honorable

Katherine A. Constantine, Chief U.S. Bankruptcy Judge, at 4:30 p.m. on Wednesday, July 8, 2026, in Courtroom 8 West, U.S. Courthouse, 300 South Fourth St., Minneapolis, Minnesota.     Pursuant to Local Rule 9006-1(d), any responsive pleading must be filed no later than 2:30 p.m. on Wednesday July 8, 2026, which is two hours before the time set for the hearing.     UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

3.     This court has jurisdiction over this proceeding pursuant to 28 U.S.C. sections 157 and 1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1.     This is a core proceeding.     This motion is filed pursuant to 11 U.S.C. section 1322(a), 1327(a), Fed. R. Bankr. P. 3001(f), Fed. R. Bankr. P. 3012(a), (b) and (c), and Minnesota Local Bankruptcy Rule 9013-1.

4.     This case was commenced voluntarily by the debtors on January 3, 2024. The debtors proposed a chapter 13 plan which sought to cure a small default in payments due to Carrington Mortgage Servicing, LLC, on a first mortgage on their homestead located at 3360 Wood Duck Drive N.W., Prior Lake, MN 55372.     The plan sought to classify the second mortgage, also owed to Carrington, in order to address a balloon payment, and it sought to place a value on the secured and unsecured priority claims owed to the Minnesota Department of Revenue and the Internal Revenue Service.     The MNDOR and IRS tax liens were secured by both personal property and the real property located at 3360 Wood Duck Drive.     Objections to the plan were filed by Carrington, MNDOR, and the IRS.     The court appointed the Honorable William J. Fisher as a mediator.     After negotiations, the mediator secured the agreement of all parties to terms in settlement of their differences, which terms were set forth in the chapter 13 plan confirmed on April 17, 2025, which plan is attached hereto and labeled as Exhibit A.     The plan provided for eventual sale of the Wood Duck Drive property, with Carrington to be fully paid for both its first and second mortgage claims, and with MNDOR and the IRS being fully paid for their secured claims with interest at the closing

of the sale.      Pursuant to Paragraphs 9.1 and 9.2, and Part 16.6, of the confirmed plan, MNDOR was to receive 39,700.00 plus 8% interest at the closing in full payment of its secured claim, and the IRS was to receive $19,977.00 plus 8% interest in full payment of its secured claim, both to be paid at such closing.      The plan further provided that the IRS would receive $133.00 per month commencing immediately for the 8% interest. The debtors are substantially current on plan payments.      They have paid $78,030.00 into the plan for distribution to creditors.      <u>A copy of the trustee's Status Report is attached as Exhibit B.</u>

5.      In accordance with the terms of the plan, the debtors signed a purchase agreement on or about May 18, 2026, by which they were to sell the Wood Duck Drive property for $745,000.00 to a qualifed buyer.      The closing was scheduled for June 26, 2026.      The purchase price was sufficient to pay all secured claims in full, including the Carrington first mortgage, the Carrington second mortgage, the IRS secured claim of $19,977.00 plus interest, the MNDOR secured claim of $39,700.00 plus interest, realtor fees, closing costs, with no other parties/entities receiving any payment from such purchase price or proceeds.      The closing firm sought and received payoff figures from Carrington, the IRS, and MNDOR.      These three entities provided payoff figures, but the IRS refused to provide any payoff figure for its secured claim.      Even worse, the IRS through the U.S. Attorney's Office informed the closing firm that payment of all the debtors' priority income taxes amounting to $272,476.97 had to be paid in order for the IRS to provide a release of its lien regarding the Wood Duck Drive property closing.      <u>See Exhibit C</u>.      This amounts to a flagrant violation of the court's order confirming the plan, as the confirmed plan clearly provided for an IRS secured claim of $19,977.00.      It is difficult to convey, in the format of a motion filed in bankruptcy court, the effect that the IRS demand has had on the parties to the sale of the Wood Duck Drive property.      Real estate closings are stressful, families are moving a residence from one place to another, and hundreds of thousands of dollars

are being spent.   For the IRS to unexpectedly violate the terms of the confirmed plan by demanding an additional $250,000.00 beyond what the plan fixed as the IRS secured claim has placed a huge stress on the parties, as the sale of the real estate cannot possibly be completed, unless the IRS complies in good faith with the terms of the confirmed plan.   The IRS is obligated to do so.   Instead, the IRS has refused to provide a payoff, blithely saying that it needs $272,476.97 in order to release its lien, and then saying on the other hand that no one is available at the IRS to perform the payoff calculations and that the parties will just have to wait until the long holiday weekend is over before anything can be done.   If the only delay were the lack of time and the IRS needed more time to simply compute the exact payoff balance on its secured claim, there would be no dispute and there would be no need for the debtors to file this motion.   The IRS has not simply stated that it needs more time to compute the payoff balance on its secured claim.   The problem is that the IRS, through its attorneys as made clear in the attached email messages, has demanded payment of many tens of thousands of dollars more than it is entitled to under the terms of the confirmed plan.   See email messages attached as Exhibit D.

6.   The IRS is aware of what constitutes a secured claim in a bankruptcy proceeding.   It is aware that the terms of a confirmed plan are binding upon it and upon every creditor, and upon the debtors.   Despite being aware of the terms of the confirmed plan, and despite being aware that a real estate closing depended upon the IRS proceeding in good faith to cooperate in the sale and to provide a lien release once paid its secured claim, the IRS instead has demanded full payment of $272,476.97 in priority taxes.   The IRS has refused to provide a payoff figure for its $19,977.00 plus 8% interest secured claim, an estimate of a payoff figure, or an assurance the IRS would release its lien once paid.   The IRS has so refused knowing the effect its refusal would have on the closing.   The literal meaning of this refusal, combined with the transmission of the IRS $272,476.97 lien payment statement, appears to be that the

IRS seeks payment from the debtors in this amount, and that the debtors pay hundreds of thousands more from the sale proceeds than the actual secured claim amount of $19,977.00.     The IRS is wrong to demand more from the closing than the amount of its secured claim plus interest.    Even if the sale had generated enough proceeds to pay more, other creditors, or the debtors, would have a stake in such proceeds and other parties would be entitled to come before the court questioning to whom and in what amounts the plan intended such proceeds to be paid.

7.      Based on the IRS refusal to provide a payoff figure, and its refusal to provide an estimate in good faith of a payoff figure, and its refusal to state to the closing firm that it will release its lien on the Wood Duck Drive property once it is paid in full the sum of $19,977.00 plus 8% interest, the court ought to conclude that the IRS has refused to comply with the order confirming the plan.

8.      The debtors request an order that the IRS comply in good faith with the order confirming the plan.

9.      The debtors request an order that the IRS secured claim be determined to be $19,982.22.     This is because the secured claim of the IRS was $19,977.00, and it has received from the trustee $133.00 per month totaling $3,591.00 toward the interest of 8%.     Upon information and belief, the trustee has two payments of $133.00 that it is holding for the IRS.     Because $3,862.22 has accrued for interest, the remaining interest is $271.22.     Once the trustee pays the $266.00 it is holding to the IRS, the total paid toward the secured claim of $19,977.00 would be $3,857.00.     The secured claim would then amount to $19,982.22.

10.      Based upon the reasons set forth herein, the debtors request that the court order accordingly.

Respectfully submitted,

July 1, 2026
Date

/e/ Craig W. Andresen
Craig W. Andresen, #186557
Attorney for Debtors
3800 W. American Blvd., Suite 1500
Bloomington, MN 55431
(952) 831-1995
craig@andresenlaw.com

**VERIFICATION**

We, Richard and Renee Golinvaux, the debtors herein, swear under penalty of perjury that the foregoing information, and Purchase Agreement (Exhibit E), and ALTA Estimated Closing Statement (Exhibit F), is true and correct to best of our knowledge, information and belief.

/s/ Richard Golinvaux
Richard Golinvaux, Debtor

7/1/26
Date

/s/Renee Golinvaux
Renee Golinvaux, Debtor

7/1/26
Date

EXHIBIT A

Local Form 3015-1 (1/22)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Richard John Golinvaux, and Renee Karen Golinvaux,

Debtor.
*In a joint case, debtor means debtors in this plan.*

Case No. 24-30007-KAC
CHAPTER 13 PLAN ☑ Modified
Dated MARCH 18, 2025

**Part 1. NOTICE OF NONSTANDARD PLAN PROVISIONS, SECURED CLAIM LIMITATIONS, AND LIEN OR SECURITY INTEREST AVOIDANCE: Debtor must check the appropriate boxes below to state whether or not the plan includes each of the following items:**

| | | | |
|---|---|---|---|
| 1.1 | A limit on the amount of a secured claim based on a valuation of the collateral for the claim, set out in Parts 9 or 16 | ☐ Included | ☑ Not included |
| 1.2 | Avoidance of a security interest or lien, set out in Part 16 | ☐ Included | ☑ Not included |
| 1.3 | Nonstandard provisions, set out in Part 16 | ☑ Included | ☐ Not included |

**Part 2. DEBTOR'S PAYMENTS TO TRUSTEE: The initial plan payment is due not later than 30 days after the order for relief, unless the court orders otherwise.**

2.1 As of the date of this plan, the debtor has paid the trustee $ 28,820.00 .
2.2 After the date of this plan, the debtor will pay the trustee $ 165,400.00 .

| Plan payment | Start MM/YYYY | End MM/YYYY | Total |
|---|---|---|---|
| 3,150.00 | 2/25 | 1/27 | 75,600.00 |
| 3,660.00 | 2/27 | 1/29 | 87,840.00 |
| | | TOTAL: | 163,440.00 |

2.3 The minimum plan length is ☐ 36 months or ☑ 60 months from the date of the initial plan payment unless all allowed claims are paid in a shorter time.
2.4 The debtor will also pay the trustee $1,960.00 by 2/28/25.
2.5 The debtor will pay the trustee a total of $ 194,220.00 [lines 2.1 + 2.2 + 2.4].

**Part 3. PAYMENTS BY TRUSTEE AND TRUSTEE'S FEES:** Prior to confirmation of the plan, the trustee will pay from available funds payments designated as Adequate Protection ("Adq. Pro.") under Parts 8 and 9 to creditors with claims secured by personal property. All other funds will be disbursed by the trustee following confirmation of the plan as soon as is practicable. The trustee will pay from available funds only creditors for which proofs of claim have been filed. The trustee is not required to retain funds for any claim for which a proof of claim has not been timely filed and may disburse those funds to other claimants. The trustee may collect a fee of up to 10% of plan payments, or $ 19,422 [line 2.5 x .10].

**Part 4. EXECUTORY CONTRACTS AND UNEXPIRED LEASES (§ 365):** The debtor assumes the following executory contracts or unexpired leases. Debtor will pay directly to creditors all payments that come due after the date the petition was filed. Cure provisions, if any, are set forth in Part 7.

| | Creditor | Description of property |
|---|---|---|
| 4.1 | n/a | |
| 4.2 | | |

**Part 5. CLAIMS NOT IN DEFAULT:** Payments on the following claims are current. The debtor will pay directly to creditors all payments that come due after the date the petition was filed. The creditors will retain liens, if any.

| | Creditor | Description of property |
|---|---|---|
| 5.1 | n/a | |
| 5.2 | | |

**Part 6. HOME MORTGAGES IN DEFAULT (§§ 1322(b)(5) AND 1322(e)):** The trustee will pay the amount of default listed in the proof of claim on the following claims secured only by a security interest in real property that is the debtor's principal residence. The debtor will pay directly to creditors all payments that come due after the date the petition was filed. The creditors will retain liens. **All following entries are estimates.**

| | Creditor | Amount of default | Monthly payment | Beginning in mo./yr. | # of payments | Remaining Payments | *+ amount paid to date by Trustee (mod plan only)* | Total payments |
|---|---|---|---|---|---|---|---|---|
| 6.1 | Carrington (1st) | 4,173 | 4,173 | 2/25 - 4/25 | 1 | | | 4,173 |
| 6.2 | Carrington (2nd) | | (see | Par. 16.4) | | | | |
| | | | (see also Par. 8.3) | | | | TOTAL: | 4,173 |

**Part 7. CLAIMS IN DEFAULT** (**§§ 1322(b)(3) AND (5) AND 1322(e)):** The trustee will pay the amount of default listed in the proof of claim in the amount allowed on the following claims. The debtor will pay directly to creditors all payments that come due after the date the petition was filed. The creditors will retain liens, if any. **All following entries are estimates, except for interest rate.**

| | Creditor | Amount of default | Interest rate (if any) | Beginning in mo./yr. | Monthly payment | # of payments | Remaining payments | *+ amount paid to date by Trustee (mod plan only)* | = Total payments |
|---|---|---|---|---|---|---|---|---|---|
| 7.1 | Wilds Assn. | 5,987 | 0 | 9/25 | 5,987 | 1 | | | 5,987 |
| | | | | | | | | TOTAL: | 5,987 |

**Part 8. SECURED CLAIMS SUBJECT TO MODIFICATION ("CRAMDOWN") PURSUANT TO § 506 (§ 1325(a)(5))** The trustee will pay the amount set forth in the "Total Payments" column below on the following secured claims if a proof of claim is filed and allowed. Notwithstanding a creditor's proof of claim filed before or after confirmation, the amount listed in the secured claim amount column binds the creditor pursuant to 11 U.S.C. § 1327 and confirmation of the plan is a determination of the creditor's allowed secured claim. For secured claims of governmental units, unless otherwise ordered by the court, the value of a secured claim listed in a proof of claim filed in accordance with FRBP 3012(c) controls over any contrary amount. Unless otherwise specified in Part 16, the creditors listed in this Part retain the liens securing their allowed secured claims to the extent provided under 11 U.S.C. § 1325(a)(5)(B)(i). Any allowed unsecured portion of the claim will be paid under Part 12, Part 13, or Part 14.

| | Creditor | Est. Claim amount | Secured claim amount | Int. Rate | Adq. Pro. (Check) | Begin-ning in mo./yr. | Monthly payment | # of Pay-ments | Remaining payments | *+ amount paid to date by Trustee (mod plan only)* | = Total payments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8.1 | Topline Credit Union | 5,229 | 5,229 | 5.5 | ☐ | (pro | rata from | 4/25 | thru | | 5,695 |
| | | | | | | | | | 6/25) | | |
| | | | | | | | | | | | |
| 8.2 | Santander USA | 15,523 | 15,523 | 10.5 | ☑ | 2/24 | 328.00 | 60 | | | 19,680 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| 8.3 | Carrington Mortgage Services | $157,360 (the filed secured claim shall be the secured claim amount) | | 8.0 | | 2/24 | $1,050 | 32 | | | 33,600 |

**TOTAL: 58,975**

**Part 9. SECURED CLAIMS EXCLUDED FROM § 506 AND NOT SUBJECT TO MODIFICATION ("CRAMDOWN") (§ 1325(a)) (910 vehicles and other things of value)** The trustee will pay the amount of the allowed secured claim listed in the proof of claim at the interest rate set forth below. Any allowed unsecured portion of the claim will be paid under Part 12, Part 13, or Part 14. All following entries are estimates, except for interest rate. Unless otherwise specified in Part 16, the creditors listed in this Part retain the liens securing their allowed secured claims to the extent provided under 11 U.S.C. § 1325(a)(5)(B)(i).

| | Creditor | Est. Secured Claim amount | Int. Rate | Adq. Pro. (Check) | Beginning in mo./yr. | Monthly payment | # of Payments | Remaining payments | *+ amount paid to date by Trustee (mod plan only)* | = Total payments |
|---|---|---|---|---|---|---|---|---|---|---|
| 9.1 | IRS | $19,977 | 8% | ☐ | 2/24 | $133 | 32 | | (Interest amount only -- claim to be paid per Part 16.6) | $4,256 |
| 9.2 | MN Dept. of Revenue ($39,700 8% - to be paid at sale) | (See Part 16.6) | | ☐ | | | | | | (See Part 16.6) |
| | | | | | | | | | TOTAL: | $4,256 |

**Part 10. PRIORITY CLAIMS (not including claims under Part 11):** The trustee will pay in full all claims entitled to priority under § 507(a)(2) through (a)(10), including the following. **The amounts listed are estimates.** The trustee will pay the allowed portion of the priority amount listed in the proof of claim.

| | Creditor | Claim amount | Beginning in mo./yr | Monthly payment | # of payments | Remaining payments | *+ amount paid to date by Trustee (mod plan only)* | = Total payments |
|---|---|---|---|---|---|---|---|---|
| 10.1 | Andresen Law | 6,000 | 4/25 | 6,000 | 1 | | | 6,000 |
| 10.2 | IRS | 66,201 | 10/25<br>10/26 | $966<br>$1,830 | 12 = $11,592<br>4 = $7,320 | 2/27: $2,069 x | 22.85 months =47,289 | 66,201 |
| 10.3 | MN Dept. of Rev. | 24,551 | 10/25<br>10/26 | $358<br>$677 | 12 = $4,296<br>4 = $2,688 | | | 24,551 |
| | | | 2/27 | $766 | 22.93 = $17,567 | | TOTAL: | 96,552 |

**Part 11. DOMESTIC SUPPORT OBLIGATION CLAIMS:** The trustee will pay in full all domestic support obligation claims entitled to priority under § 507(a)(1), including the following. **The amounts listed are estimates.** The trustee will pay the allowed portion of the priority amount listed in the proof of claim.

| | Creditor | Claim amount | Beginning in mo./yr | Monthly payment | # of payments | Remaining payments | *+ amount paid to date by Trustee (mod plan only)* | = Total payments |
|---|---|---|---|---|---|---|---|---|
| 11.1 | n/a | | | | | | | |
| 11.2 | | | | | | | | |
| 11.3 | | | | | | | | |
| | | | | | | | TOTAL: | |

**Part 12. SEPARATE CLASSES OF UNSECURED CLAIMS:** In addition to the class of unsecured claims specified in Part 13, there shall be separate classes of non-priority unsecured claims including the following. The trustee will pay the allowed portion of the nonpriority amount listed in the proof of claim. All following entries are estimates.

| | Creditor | Unsecured claim amount | Interest rate (if any) | Beginning in mo./yr. | Monthly payment | # of payments | Remaining payments | *+ amount paid to date by Trustee (mod plan only)* | = Total payments |
|---|---|---|---|---|---|---|---|---|---|
| 12.1 | n/a | | | | | | | | |
| | | | | | | | | TOTAL: | |

**Part 13. TIMELY FILED UNSECURED CLAIMS:** The trustee will pay holders of allowed non-priority unsecured claims for which proofs of claim were timely filed the balance of all payments received by the trustee and not paid under Parts 3, 6, 7, 8, 9, 10, 11, and 12 their pro rata share of approximately $ 4,655 [line 2.5 minus totals in Parts 3, 6, 7, 8, 9, 10, 11, and 12].

13.1 The debtor estimates that the total unsecured claims held by creditors listed in Part 8 and 9 are $ 0 .
13.2 The debtor estimates that the debtor's total unsecured claims (excluding those in Parts 8 and 9) are $ 49,910 .
13.3 Total estimated unsecured claims are $ 49,910 [lines 13.1 + 13.2].

**Part 14. TARDILY-FILED UNSECURED CLAIMS:** All money paid by the debtor to the trustee under Part 2, but not distributed by the trustee under Parts 3, 6, 7, 8, 9, 10, 11, 12, and 13, will be paid to holders of allowed nonpriority unsecured claims for which proofs of claim were tardily filed. Tardily filed claims remain subject to objection pursuant to 11 U.S.C. §502(b)(9).

**Part 15. SURRENDER OF COLLATERAL AND REQUEST FOR TERMINATION OF STAY:** The debtor has surrendered or will surrender the following property to the creditor. The debtor requests that the stays under §§ 362(a) and 1301(a) be terminated as to the surrendered collateral upon confirmation of the plan.

| | Creditor | Description of property (*including the complete legal description of real property)* |
|---|---|---|
| 15.1 | n/a | |

**Part 16. NONSTANDARD PROVISIONS:** The Trustee may distribute additional sums not expressly provided for herein at the trustee's discretion. Any nonstandard provisions, as defined in FRBP 3015(c), must be in this Part. Any nonstandard provision placed elsewhere in the plan is void. Any request by the debtor to modify a claim secured only by a security interest in real property that is the debtor's principal residence must be listed in this Part and the debtor must bring a motion to determine the value of the secured claim pursuant to Local Rule 3012-1(a).

Part 16.2: The debtors shall pay to the trustee as an additional plan payment the portion of any income tax refunds received that exceeds $2,000 not including earned income credit or additional child tax credit.

Part 16.3: IMPORTANT: See attached Page 5 of this plan for additional provisions regarding treatment of second position mortgage held by Carrington Mortgage Services, treatment of secured claims held by Internal Revenue Service and Minnesota Dept. of Revenue, and avoidance of judgment liens pursuant to 11 U.S.C. section 522(f).

**SUMMARY OF PAYMENTS:**

| Class of payment | Amount to be paid |
|---|---|
| Payments by trustee [Part 3] | $ 19,422.00 |
| Home mortgages in default [Part 6] | $ 4,173.00 |
| Claims in default [Part 7] | $ 5,987.00 |
| Secured claims subject to modification (cramdown) pursuant to § 506 [Part 8] | $ 58,975.00 |
| Secured claims excluded from § 506 [Part 9] | $ 4,256.00 |
| Priority claims [Part 10] | $ 96,752.00 |
| Domestic support obligation claims [Part 11] | $ 0.00 |
| Separate classes of unsecured claims [Part 12] | $ 0.00 |
| Timely filed unsecured claims [Part 13] | $ 4,655.00 |
| TOTAL (must equal line 2.5) | $ 194,220.00 |

Certification regarding nonstandard provisions:
I certify that this plan contains no nonstandard provision except as placed in Part 16.

Signed: /s/ Craig W Andresen#186557
Attorney for debtor

Signed: /s/Richard Golinvaux
Debtor 1

Signed: /s/Renee Golinvaux
Debtor 2 (if joint case)

**U.S. BANKRUPTCY COURT – DISTRICT OF MINNESOTA**
**Richard J. Golinvaux and Renee K. Golinvaux, Case No. 24-30007-KAC**
**Page 5, Modified Chapter 13 Plan, Dated March 18, 2025**

Part 16.4: Second Position Mortgage Claim Held by Carrington Mortgage Services, LLC. to be Paid in Full By Month 32. Pursuant to 11 U.S.C. section 1322(c)(2), the creditor's rights are modified pursuant to section 1325(a)(5), section 506, and other applicable sections of Title 11, as follows: the annual interest rate shall be 8 percent, the remaining balance on the claim as of the petition date is $155,805.47, and such remaining balance shall be the amount of the secured claim for which the creditor retains its lien in full as modified herein, until the claim as modified is paid in full. Commencing in month 1 of this plan, to-wit February 2024, the trustee shall pay from funds on hand the sum of $1,050.00 per month to the creditor for 32 months, totaling $33,600.00. The sum of $1,050.00 per month represents the monthly interest accruing upon this claim at the rate of 8 percent per year. Upon completion of the 32 monthly payments due under the plan, and in month 32, the creditor has the right to be paid the claim amount of $155,805.47 plus reasonable attorneys' fees and costs, and other reasonable charges or disbursements allowed under the note and mortgage. Such payment of $155,805.47 shall not be paid from funds on hand paid into the plan, but shall be paid from the debtor's own funds from proceeds of such sale.

Part 16.5: Avoidance of judgment liens pursuant to section 522(f). The order confirming this plan shall constitute an order avoiding the following judgment lien pursuant to section 522(f), and the same shall no longer impair the debtor's interest in their homestead real property located at 3360 Wood Duck Drive N.W., Prior Lake, Minnesota, legally described as Lot 24, Block 1, The Wilds Addition to Scott County, Minnesota:

Judgment in favor of Discover Bank, docketed 8/21/2019 in Scott County, Minnesota, docket no. 70-CV-19-14146, in the amount of 15,558.42.

Part 16.6: Secured Caims Held by IRS and Minnesota Revenue; Duty to File Tax Returns and Pay Taxes. IRS and Minesota Revenue have secured claims, and they will retain their liens upon the debtors' homestead real property located at 3360 Wood Duck Drive N.W, Prior Lake, Minnesota, and the personal property, until payment of their claims in full as determined under applicable nonbankruptcy law, including 8% interest per annum. These claims will be paid in full from proceeds of sale of debtors' homestead real property as described in Part 16.7. With respect to treatment of the IRS's secured claim, per Part 9.1, the IRS will receive from the trustee 8% interest on its claim beginning February 2024 for Month 1 through Month 32. The IRS will receive from the debtors 8% interest on its claim in Month 32 in addition to full payment of its claim from proceeds of sale of debtors' homestead real property as described in Part 16. 7.

Part 16.7: Carrington Second Mortgage Claim.

By June 1, 2026 (Month 29), the debtors must list the property for sale on the MLS or equivalent listing service. A for sale by owner listing or a listing on Craigslist or Facebook marketplace is not sufficient.

By August 15, 2026 (Month 31), the debtors must have a signed purchase agreement to sell the proper ty.

By September 25, 2026 (Month 32), the debtors must close a sale of the property and pay Carrington's second mortgage claim in full. There will be no exte[illegible]ons.

<<PAGE 5>>

Document Page 12 of 44

**U.S. BANKRUPTCY COURT – DISTRICT OF MINNESOTA**
**Richard J. Golinvaux and Renee K. Golinvaux, Case No. 24-30007-KAC**
**Page 6, Modified Chapter 13 Plan, Dated March 18, 2025**

Part 16.7 (cont'd):

If the debtors fail to make two or more of the required monthly plan payments to the Trustee and that causes the Trustee to be unable to remit the interest-only payments to Carrington, then Carrington may serve a notice of default on the debtors, the debtors' attorney, and the Chapter 13 Trustee, by first class mail. Unless the debtors cure the default within ten (10) days after service of said notice, Carrington or its attorney may file an affidavit of default with the court and may be entitled to relief from the automatic stay.

If the debtors fail to comply with the sale-related deadlines listed above, then Carrington may serve a notice of default on the debtors and the debtors' attorney. Unless the debtors cure the default within ten (10) days after service of said notice, Carrington or its attorney may file an affidavit of default with the court and may be entitled to an order for dismissal of this case.

Nothing in this Part shall be construed to prevent the trustee from filing a motion to dismiss in the event of a default by the debtors in the performance of any obligation or duty imposed in this plan.

Part 16.8: Tax Provisions. Debtors will timely file as and when due any and all post-petition federal and state income tax returns and will timely pay any post-petition federal and state income taxes. Should Debtors default on timely filing of returns, and/or payment of post-petition federal and state income taxes, the IRS and Minnesota Department of Revenue may be entitled to an order for dismissal of this case on the filing of an affidavit with the Court that attests to such default, and also that the IRS and Minnesota Department of Revenue have mailed a letter by first class mail to Debtors and Debtors' counsel that gave notice of said default and a 30-day period to cure, and that such cure had not been performed. Such an affidavit must be served upon the debtors, their attorney, and the trustee. In the event of any hearing upon such an affidavit, the debtors may only oppose the relief requested on the ground that no default existed on the obligations imposed by this paragraph.
<<END OF DOCUMENT>>

<<PAGE 6>>

Chapter 13 Trustee Online Case Status System

get case status | document upload | logout

# Gregory A. Burrell, Standing Chapter 13 Trustee

### Status of Claims as of 7/1/2026

### Case # 24-30007 KAC

Upload Document to Trustee

RICHARD J GOLINVAUX
RENEE K GOLINVAUX

31 Remaining of 60 Mos.

Current Debtor Pmt: $3,150.00 / Monthly

Atty: Craig W. Andresen

Summary

| | | | |
|---|---|---|---|
| **Filed:** 1/3/2024 | **Confirmed:** 4/17/2025 | **Base Amount:** $194,220.00 | **Debtor Refunds:** $0.00 |
| **First Mtg:** 1/31/2024 9:10:00 AM | **Plan Filed:** 1/17/2024 | **Total Paid In:** $78,030.00 | **Delinq Amount:** $3,150.00 |
| | | **Balance on Hand:** $2,916.59 | |

Payment Schedule

**Debtor**

| Start Date | Start | Thru | Payment | Total Pmts | Type |
|---|---|---|---|---|---|
| 2/2/2024 | 1 | 4 | $1,700.00 | $6,800.00 | G |
| 6/2/2024 | 5 | 5 | $3,400.00 | $3,400.00 | G |
| 7/2/2024 | 6 | 12 | $2,660.00 | $18,620.00 | |
| 2/2/2025 | 13 | 13 | $5,110.00 | $5,110.00 | |
| 3/2/2025 | 14 | 36 | $3,150.00 | $72,450.00 | |
| 2/2/2027 | 37 | 60 | $3,660.00 | $87,840.00 | |

Payment History

| | | | | |
|---|---|---|---|---|
| **6/23/2026** $3,150.00 | **4/6/2026** $3,150.00 | **3/9/2026** $3,150.00 | **2/6/2026** $3,150.00 | **1/7/2026** $3,150.00 |
| **12/8/2025** $3,150.00 | **11/6/2025** $3,150.00 | **10/7/2025** $3,150.00 | **9/9/2025** $3,150.00 | **8/12/2025** $3,150.00 |
| **7/8/2025** $3,150.00 | **6/6/2025** $3,150.00 | **5/7/2025** $3,150.00 | **4/7/2025** $3,150.00 | **3/25/2025** $2,450.00 |
| **3/7/2025** $2,660.00 | **2/5/2025** $2,660.00 | **1/7/2025** $2,660.00 | **12/6/2024** $2,660.00 | **11/5/2024** $2,660.00 |
| **10/7/2024** $2,660.00 | **9/6/2024** $2,660.00 | **8/5/2024** $2,660.00 | **7/2/2024** $1,700.00 | **5/31/2024** $1,700.00 |
| **5/1/2024** $1,700.00 | **4/2/2024** $1,700.00 | **3/7/2024** $1,700.00 | **2/2/2024** $1,700.00 | |

Show Details

Claims

| Creditor Name | Clm Num | Last Pymt | Cls | Int Rate | Fixed Pymt | Disb Code | Debt | Principal Paid | Claimed | Tot Int Pd | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Craig W. Andresen | 000-0 | 8/28/2025 | L | 0.00% | $0.00 | 20 | $6,313.00 | $6,000.00 | $6,313.00 | $0.00 | $0.00 |
| DIRECTV, LLC BY AMERICAN INFOSOURCE AS AGENT | 001-0 | | U | 0.00% | $0.00 | 50 | $144.96 | $0.00 | $144.96 | $0.00 | $144.96 |
| The Minnesota Department of Revenue | 002-0 | | P | 0.00% | $0.00 | 46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| The Minnesota Department of Revenue | 002-1 | | U | 0.00% | $0.00 | 50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DISCOVER BANK | 003-0 | | U | 0.00% | $0.00 | 50 | $3,956.37 | $0.00 | $3,956.37 | $0.00 | $3,956.37 |
| SANTANDER CONSUMER USA INC | 004-0 | 4/29/2026 | S | 0.00% | $328.00 | 30 | $19,680.00 | $8,856.00 | $19,680.00 | $0.00 | $10,824.00 |
| QUANTUM3 GROUP, LLC | 005-0 | | U | 0.00% | $0.00 | 50 | $552.82 | $0.00 | $552.82 | $0.00 | $552.82 |
| QUANTUM3 GROUP, LLC | 006-0 | | U | 0.00% | $0.00 | 50 | $605.86 | $0.00 | $605.86 | $0.00 | $605.86 |

| DISCOVER BANK | 007-0 | | U | 0.00% | $0.00 | 50 | $15,065.42 | $0.00 | $15,065.42 | $0.00 | $15,065.42 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| LVNV FUNDING, LLC | 008-0 | | U | 0.00% | $0.00 | 50 | $2,858.20 | $0.00 | $2,858.20 | $0.00 | $2,858.20 |
| Wells Fargo ACH | 009-0 | | U | 0.00% | $0.00 | 50 | $6,220.51 | $0.00 | $6,220.51 | $0.00 | $6,220.51 |
| NORDSTROM, INC | 010-0 | | U | 0.00% | $0.00 | 50 | $4,976.59 | $0.00 | $4,976.59 | $0.00 | $4,976.59 |
| PREMIER BANKCARD, LLC | 011-0 | | U | 0.00% | $0.00 | 50 | $995.47 | $0.00 | $995.47 | $0.00 | $995.47 |
| CAPITAL ONE BANK (USA), NA | 012-0 | | U | 0.00% | $0.00 | 50 | $454.71 | $0.00 | $454.71 | $0.00 | $454.71 |
| AMERICAN EXPRESS NATIONAL BANK | 013-0 | | U | 0.00% | $0.00 | 50 | $5,143.55 | $0.00 | $5,143.55 | $0.00 | $5,143.55 |
| AMERICAN EXPRESS NATIONAL BANK | 014-0 | | U | 0.00% | $0.00 | 50 | $6,389.22 | $0.00 | $6,389.22 | $0.00 | $6,389.22 |
| Carrington Mortgage Services, LLC | 015-0 | 6/29/2026 | S | 0.00% | $0.00 | 29 | $33,600.00 | $28,350.00 | $33,600.00 | $0.00 | $5,250.00 |
| PCA ACQUISITIONS V, LLC | 016-0 | | U | 0.00% | $0.00 | 50 | $1,898.60 | $0.00 | $1,898.60 | $0.00 | $1,898.60 |
| US BANK NATIONAL ASSOCIATION | 017-0 | | U | 0.00% | $0.00 | 50 | $11,580.30 | $0.00 | $11,580.30 | $0.00 | $11,580.30 |
| Carrington Mortgage Services, LLC | 018-0 | 9/29/2025 | S | 0.00% | $540.17 | 30 | $0.00 | $4,173.53 | $4,173.53 | $0.00 | Stay Lifted |
| CITIBANK, N.A. | 019-0 | | U | 0.00% | $0.00 | 50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| LVNV FUNDING, LLC | 020-0 | | U | 0.00% | $0.00 | 50 | $3,750.50 | $0.00 | $3,750.50 | $0.00 | $3,750.50 |
| LVNV FUNDING, LLC | 021-0 | | U | 0.00% | $0.00 | 50 | $167.56 | $0.00 | $167.56 | $0.00 | $167.56 |
| SMITH JADIN JOHNSON | 022-0 | 9/29/2025 | S | 0.00% | $892.12 | 30 | $5,987.50 | $5,987.50 | $5,987.50 | $0.00 | $0.00 |
| Wells Fargo ACH | 023-0 | | U | 0.00% | $0.00 | 50 | $3,812.61 | $0.00 | $3,812.61 | $0.00 | $3,812.61 |
| BANK OF AMERICA, NA | 024-0 | | U | 0.00% | $0.00 | 50 | $1,453.74 | $0.00 | $1,453.74 | $0.00 | $1,453.74 |
| BANK OF AMERICA, NA | 025-0 | | U | 0.00% | $0.00 | 50 | $1,416.75 | $0.00 | $1,416.75 | $0.00 | $1,416.75 |
| Top Line Credit Union | 026-0 | 11/26/2025 | S | 0.00% | $719.93 | 30 | $5,695.00 | $5,695.00 | $5,695.00 | $0.00 | $0.00 |
| The Department of the Treasury | 027-0 | 4/29/2026 | S | 0.00% | $133.00 | 30 | $4,256.00 | $3,591.00 | $4,256.00 | $0.00 | $665.00 |
| The Department of the Treasury | 027-1 | 4/29/2026 | P | 0.00% | $0.00 | 41 | $60,128.23 | $4,612.81 | $60,128.23 | $0.00 | $55,515.42 |
| The Department of the Treasury | 027-2 | | U | 0.00% | $0.00 | 50 | $448,840.44 | $0.00 | $448,840.44 | $0.00 | $448,840.44 |
| The Minnesota Department of Revenue | 028-0 | | P | 0.00% | $0.00 | 46 | $0.00 | $0.00 | $0.00 | $0.00 | Withdrawn |
| Craig W. Andresen | 100-0 | | L | 0.00% | $0.00 | 32 | $0.00 | $0.00 | $4,500.00 | $0.00 | Direct |
| The Bank of New York Trust Company | 250-0 | | U | 0.00% | $0.00 | 60 | $0.00 | $0.00 | $0.00 | $0.00 | Not Filed |
| CARRINGTON MORTGAGE SERVICES | 251-0 | | U | 0.00% | $0.00 | 60 | $0.00 | $0.00 | $0.00 | $0.00 | Not Filed |
| Internal Revenue Service | 252-0 | | U | 0.00% | $0.00 | 60 | $0.00 | $0.00 | $0.00 | $0.00 | Not Filed |
| Minnesota Department of Revenue | 253-0 | | U | 0.00% | $0.00 | 60 | $0.00 | $0.00 | $0.00 | $0.00 | Not Filed |
| ALLINA COLLECTION DEPT | 300-0 | | U | 0.00% | $0.00 | 55 | $0.00 | $0.00 | $0.00 | $0.00 | Not Filed |
| Messerli & Kramer, PA | 301-0 | | U | 0.00% | $0.00 | 55 | $0.00 | $0.00 | $0.00 | $0.00 | Not Filed |
| CHASE | 302-0 | | U | 0.00% | $0.00 | 55 | $0.00 | $0.00 | $0.00 | $0.00 | Not Filed |
| COMENITY BANK | 303-0 | | U | 0.00% | $0.00 | 55 | $0.00 | $0.00 | $0.00 | $0.00 | Not Filed |
| SPECIAL FINANCING CO | 304-0 | | U | 0.00% | $0.00 | 55 | $0.00 | $0.00 | $0.00 | $0.00 | Not Filed |
| SUBURBAN EMERGENCY ASSOCIATION | 305-0 | | U | 0.00% | $0.00 | 55 | $0.00 | $0.00 | $0.00 | $0.00 | Not Filed |
| The Minnesota Department of Revenue | 400-0 | | S | 0.00% | $0.00 | 32 | $0.00 | $0.00 | $0.00 | $0.00 | Direct |
| The Minnesota Department of Revenue | 400-1 | 4/29/2026 | P | 0.00% | $0.00 | 41 | $24,551.02 | $1,883.46 | $24,551.02 | $0.00 | $22,667.56 |
| The Minnesota Department of Revenue | 400-2 | | U | 0.00% | $0.00 | 50 | $2,000.13 | $0.00 | $2,000.13 | $0.00 | $2,000.13 |
| The Department of the Treasury | 401-0 | | P | 0.00% | $0.00 | 46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| The Minnesota Department of Revenue | 402-0 | | P | 0.00% | $0.00 | 46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| The Department of the Treasury | 403-0 | | S | 0.00% | $0.00 | 36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| The Department of the Treasury | 404-0 | | P | 0.00% | $0.00 | 46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Citibank, N.A. - Exception Payments | 405-0 | | U | 0.00% | $0.00 | 50 | $3,028.52 | $0.00 | $3,028.52 | $0.00 | $3,028.52 |
| Gregory A. Burrell | TRS-0 | 6/23/2026 | T | 0.00% | $0.00 | 00 | $15,259.31 | $5,964.11 | $0.00 | $0.00 | $9,295.20 |

Disbursement Details

| Clm | Date | Check# | Principal | Int Pd | Total Paid |
|---|---|---|---|---|---|
| 000-0 | Craig W. Andresen | | | | |
| 000-0 | 8/28/2025 | 8008213 | $6,000.00 | $0.00 | $6,000.00 |
| | | **Total** | $6,000.00 | $0.00 | $6,000.00 |

| Clm | Date | Check# | Principal | Int Pd | Total Paid |
|---|---|---|---|---|---|
| 004-0 | SANTANDER CONSUMER USA INC | | | | |
| 004-0 | 4/29/2026 | 4740691 | $328.00 | $0.00 | $328.00 |
| 004-0 | 3/30/2026 | 4739565 | $328.00 | $0.00 | $328.00 |
| 004-0 | 2/26/2026 | 4738442 | $328.00 | $0.00 | $328.00 |
| 004-0 | 1/29/2026 | 4737398 | $328.00 | $0.00 | $328.00 |
| 004-0 | 12/30/2025 | 4736331 | $350.71 | $0.00 | $350.71 |
| 004-0 | 11/26/2025 | 4735240 | $376.79 | $0.00 | $376.79 |
| 004-0 | 10/29/2025 | 4734242 | $353.20 | $0.00 | $353.20 |

| | | | | | |
|---|---|---|---|---|---|
| 004-0 | 9/29/2025 | 4733174 | $326.92 | $0.00 | $326.92 |
| 004-0 | 8/28/2025 | 4732096 | $321.48 | $0.00 | $321.48 |
| 004-0 | 7/30/2025 | 4731010 | $284.49 | $0.00 | $284.49 |
| 004-0 | 6/27/2025 | 4729926 | $282.41 | $0.00 | $282.41 |
| 004-0 | 5/29/2025 | 4728870 | $328.00 | $0.00 | $328.00 |
| 004-0 | 4/29/2025 | 4727752 | $328.00 | $0.00 | $328.00 |
| 004-0 | 3/28/2025 | 4727079 | $328.00 | $0.00 | $328.00 |
| 004-0 | 2/27/2025 | 4725992 | $328.00 | $0.00 | $328.00 |
| 004-0 | 1/30/2025 | 4724955 | $328.00 | $0.00 | $328.00 |
| 004-0 | 12/30/2024 | 4723894 | $328.00 | $0.00 | $328.00 |
| 004-0 | 11/27/2024 | 4722794 | $328.00 | $0.00 | $328.00 |
| 004-0 | 10/30/2024 | 4721753 | $2,952.00 | $0.00 | $2,952.00 |
| | | **Total** | $8,856.00 | $0.00 | $8,856.00 |

| **Clm** | **Date** | **Check#** | **Principal** | **Int Pd** | **Total Paid** |
|---|---|---|---|---|---|
| 015-0 | Carrington Mortgage Services, LLC | | | | |
| 015-0 | 6/29/2026 | 4742343 | $1,050.00 | $0.00 | $1,050.00 |
| 015-0 | 6/4/2026 | 0 | ($1,050.00) | $0.00 | ($1,050.00) |
| 015-0 | 4/29/2026 | 4740142 | $1,050.00 | $0.00 | $1,050.00 |
| 015-0 | 3/30/2026 | 4738983 | $1,050.00 | $0.00 | $1,050.00 |
| 015-0 | 2/26/2026 | 4737943 | $1,050.00 | $0.00 | $1,050.00 |
| 015-0 | 1/29/2026 | 4736883 | $1,050.00 | $0.00 | $1,050.00 |
| 015-0 | 12/30/2025 | 4735775 | $1,509.20 | $0.00 | $1,509.20 |
| 015-0 | 11/26/2025 | 4734744 | $2,036.75 | $0.00 | $2,036.75 |
| 015-0 | 10/29/2025 | 4733736 | $1,559.56 | $0.00 | $1,559.56 |
| 015-0 | 9/29/2025 | 4732638 | $1,046.53 | $0.00 | $1,046.53 |
| 015-0 | 8/28/2025 | 4731580 | $1,029.13 | $0.00 | $1,029.13 |
| 015-0 | 7/30/2025 | 4730501 | $910.73 | $0.00 | $910.73 |
| 015-0 | 6/27/2025 | 4729436 | $904.06 | $0.00 | $904.06 |
| 015-0 | 5/29/2025 | 4728350 | $1,050.00 | $0.00 | $1,050.00 |
| 015-0 | 4/29/2025 | 4727261 | $14,104.04 | $0.00 | $14,104.04 |
| | | **Total** | $28,350.00 | $0.00 | $28,350.00 |

| **Clm** | **Date** | **Check#** | **Principal** | **Int Pd** | **Total Paid** |
|---|---|---|---|---|---|
| 018-0 | Carrington Mortgage Services, LLC | | | | |
| 018-0 | 9/29/2025 | 4732638 | $0.99 | $0.00 | $0.99 |
| 018-0 | 8/28/2025 | 4731580 | $49.02 | $0.00 | $49.02 |
| 018-0 | 7/30/2025 | 4730501 | $327.07 | $0.00 | $327.07 |
| 018-0 | 6/27/2025 | 4729436 | $465.09 | $0.00 | $465.09 |
| 018-0 | 5/29/2025 | 4728350 | $486.69 | $0.00 | $486.69 |
| 018-0 | 4/29/2025 | 4727251 | $2,844.67 | $0.00 | $2,844.67 |
| | | **Total** | $4,173.53 | $0.00 | $4,173.53 |

| **Clm** | **Date** | **Check#** | **Principal** | **Int Pd** | **Total Paid** |
|---|---|---|---|---|---|
| 022-0 | SMITH JADIN JOHNSON | | | | |
| 022-0 | 9/29/2025 | 4733207 | $8.60 | $0.00 | $8.60 |
| 022-0 | 7/30/2025 | 4731043 | $56.23 | $0.00 | $56.23 |
| 022-0 | 6/27/2025 | 4729958 | $401.65 | $0.00 | $401.65 |
| 022-0 | 5/29/2025 | 4728906 | $892.12 | $0.00 | $892.12 |
| 022-0 | 4/29/2025 | 4727790 | $4,628.90 | $0.00 | $4,628.90 |
| | | **Total** | $5,987.50 | $0.00 | $5,987.50 |

| **Clm** | **Date** | **Check#** | **Principal** | **Int Pd** | **Total Paid** |
|---|---|---|---|---|---|
| 026-0 | Top Line Credit Union | | | | |
| 026-0 | 11/26/2025 | 4735331 | $245.05 | $0.00 | $245.05 |
| 026-0 | 10/29/2025 | 4734341 | $806.28 | $0.00 | $806.28 |
| 026-0 | 9/29/2025 | 4733280 | $1,374.25 | $0.00 | $1,374.25 |
| 026-0 | 8/28/2025 | 4732197 | $1,351.41 | $0.00 | $1,351.41 |
| 026-0 | 7/30/2025 | 4731120 | $1,195.93 | $0.00 | $1,195.93 |
| 026-0 | 6/27/2025 | 4730032 | $722.08 | $0.00 | $722.08 |
| | | **Total** | $5,695.00 | $0.00 | $5,695.00 |

| **Clm** | **Date** | **Check#** | **Principal** | **Int Pd** | **Total Paid** |
|---|---|---|---|---|---|
| 027-0 | The Department of the Treasury | | | | |
| 027-0 | 4/29/2026 | 8008713 | $133.00 | $0.00 | $133.00 |
| 027-0 | 3/30/2026 | 8008648 | $133.00 | $0.00 | $133.00 |
| 027-0 | 2/26/2026 | 8008588 | $133.00 | $0.00 | $133.00 |
| 027-0 | 1/29/2026 | 8008524 | $133.00 | $0.00 | $133.00 |

| | | | | | |
|---|---|---|---|---|---|
| 027-0 | 12/30/2025 | 8008462 | $191.17 | $0.00 | $191.17 |
| 027-0 | 11/26/2025 | 8008404 | $257.99 | $0.00 | $257.99 |
| 027-0 | 10/29/2025 | 8008340 | $197.55 | $0.00 | $197.55 |
| 027-0 | 9/29/2025 | 8008280 | $132.56 | $0.00 | $132.56 |
| 027-0 | 8/28/2025 | 8008217 | $130.35 | $0.00 | $130.35 |
| 027-0 | 7/30/2025 | 8008157 | $115.36 | $0.00 | $115.36 |
| 027-0 | 6/27/2025 | 8008099 | $114.51 | $0.00 | $114.51 |
| 027-0 | 5/29/2025 | 8008038 | $133.00 | $0.00 | $133.00 |
| 027-0 | 4/29/2025 | 8007975 | $1,786.51 | $0.00 | $1,786.51 |
| | | **Total** | $3,591.00 | $0.00 | $3,591.00 |

| Clm | Date | Check# | Principal | Int Pd | Total Paid |
|---|---|---|---|---|---|
| 027-1 | The Department of the Treasury | | | | |
| 027-1 | 4/29/2026 | 8008713 | $998.07 | $0.00 | $998.07 |
| 027-1 | 3/30/2026 | 8008648 | $998.07 | $0.00 | $998.07 |
| 027-1 | 2/26/2026 | 8008588 | $998.06 | $0.00 | $998.06 |
| 027-1 | 1/29/2026 | 8008524 | $998.07 | $0.00 | $998.07 |
| 027-1 | 12/30/2025 | 8008462 | $620.54 | $0.00 | $620.54 |
| | | **Total** | $4,612.81 | $0.00 | $4,612.81 |

| Clm | Date | Check# | Principal | Int Pd | Total Paid |
|---|---|---|---|---|---|
| 400-1 | The Minnesota Department of Revenue | | | | |
| 400-1 | 4/29/2026 | 4740482 | $407.52 | $0.00 | $407.52 |
| 400-1 | 3/30/2026 | 4739342 | $407.52 | $0.00 | $407.52 |
| 400-1 | 2/26/2026 | 4738251 | $407.53 | $0.00 | $407.53 |
| 400-1 | 1/29/2026 | 4737206 | $407.52 | $0.00 | $407.52 |
| 400-1 | 12/30/2025 | 4736122 | $253.37 | $0.00 | $253.37 |
| | | **Total** | $1,883.46 | $0.00 | $1,883.46 |



EXHIBIT C

**Department of the Treasury**
**Internal Revenue Service**
**Small Business / Self-Employed Division**
30 EAST SEVENTH STREET
WELLS FARGO PLACE
ST. PAUL, MN 55101

**Date:**
6/29/2026
**Taxpayer ID number (last 4 digits):**
XXX-XX-9414, XXX-XX-1348
**Person to contact:**
C. KRAUS
**Employee ID number:**
1000208218
**Contact numbers:**
Telephone: (651)361-1561
Fax: (888)260-8778
**Payoff number, if applicable**

Gibraltar Title
7825 Washington Ave Suite 200
Bloomington, MN 55439

**Re: Richard & Renee Golinvaux**

**The amount owed only on the tax liabilities included on the notices of federal tax lien is $272,476.97.**

Thank you for contacting us about paying your tax debt and having the liens against you released. We previously filed Notices of Federal Tax Lien on the tax liabilities listed under "Notices of lien on your tax debt." You also may owe other tax liabilities not included on a notice of lien. These liabilities are listed under "Other tax debt" below.

You owe a total of $567,732.05, including penalties and interest, on all your tax debt.

The amount you owe only on the notices of lien filed against you is $272,476.97 computed to 07/13/2026.

**What you need to do immediately**
Pay the amount due by the date shown above to have the liens released. Liens are released within 30 days after we receive the payment, or we receive notification that the funds have been transferred to us. Follow these instructions when making your payment:

- Make the check or money order payable to the United States Treasury.
- Write the full taxpayer identification number in the header of this notice and on the check or money order.
- Mail your payment to the address shown above with a copy of this letter so we receive it by the date shown above. You don't need to send the payment by express or certified mail as it won't affect payment processing.

To expedite processing of the certificate of release of lien, use one of the following payment options when paying the balance owed:

- Certified or cashier's check
- Treasurer's check drawn on a national or state bank or a trust company
- Postal or bank money order

You can immediately receive a certificate of release of the lien by visiting a local IRS office authorized to accept payments and paying the entire balance owed with cash or one of the types of payment listed above. To locate an office near you and see its available services, visit our website at IRS.gov and select "Contact Your Local Office."

**Next steps**
After you've paid your tax debt, see the enclosed Publication 1450, Instructions on How to Request a Certificate of Release of Federal Tax Lien, for more information on the lien release process.

If we receive your payment without a copy of this letter or in a method other than the ones listed, we'll issue Form 668(Z), Certificate of Release of Federal Tax Lien, within 30 days of receiving payment or notification of transferred funds.

You can contact the person identified at the top of this notice if you have questions.

**What you should know**

A tax lien generally attaches to all property you currently own and to all property you may acquire in the future. The notice of lien is a public record. It may damage your credit or negatively affect your ability to get credit. The notice of lien remains in effect until the tax liability is satisfied or is no longer enforceable.

**Additional information**

- Visit IRS.gov/taxlien for general lien information.
- For tax forms, instructions, and publications, visit IRS.gov/forms or call 800-TAX-FORM (800-829-3676).
- Keep this letter for your records.
- If you need help, please don't hesitate to contact us.

**Taxpayer name: RICHARD & RENEE GOLINVAUX** **Payoff number:**
**Taxpayer ID number (last 4 digits):XXX-XX-9414**

**Notices of lien on your tax debt**
We filed notices of lien on the following tax liabilities:

Statutory additions to:
07/13/2026

| Tax Type | MFT | Tax Period | Name Control | Unpaid Balance | Interest | Penalties | Total |
|---|---|---|---|---|---|---|---|
| 1040 | 30 | 12/31/2013 | GOLI | $11,360.08 | $2,992.63 | $0.00 | $14,352.71 |
| 1040 | 30 | 12/31/2014 | GOLI | $15,379.91 | $3,430.51 | $0.00 | $18,810.42 |
| 1040 | 30 | 12/31/2015 | GOLI | $74,912.28 | $16,709.33 | $0.00 | $91,621.61 |
| 1040 | 30 | 12/31/2016 | GOLI | $43,927.42 | $9,798.10 | $0.00 | $53,725.52 |
| 1040 | 30 | 12/31/2017 | GOLI | $51,192.90 | $11,418.69 | $0.00 | $62,611.59 |
| 1040 | 30 | 12/31/2019 | GOLI | $24,139.70 | $5,384.41 | $0.00 | $29,524.11 |
| 1040 | 30 | 12/31/2020 | GOLI | $459.61 | $1,371.40 | $0.00 | $1,831.01 |
| | | | | | **Sub Total** | | $272,476.97 |

This letter may contain other pages listing additional liabilities

EXHIBIT D

**From:** Momoh, Adine (USAMN)
**To:** Jeffrey Bruzek; Kevin Dobie; Carolyn Hanson
**Cc:** Julie Benham; Ashlie Ebner; Craig Andresen
**Subject:** RE: Golinvaux, 24-30007-KAC, closing, please respond
**Date:** Tuesday, June 30, 2026 2:09:31 PM
**Attachments:** image003.png
US_BAN_MNB_3_24bk30007__Amended_Claim_27_filed_by_INTERNAL_REVENUE_SERVICE.pdf
2026.06.29 IRS Lien Payoff Letter 24-30007MN GOLI LIEN PAYOFF Title Co v.1.pdf
24-30007MN GOLI LIENs v.1.pdf

---

All,

I have reviewed the emails below and am waiting to discuss with the IRS. A couple of thoughts while I wait to hear back from the IRS (which might not be until Monday given the Fourth of July holiday):

1. The lien that the IRS filed and recorded, and which attaches to the Debtors' property is not limited to the $19,977.04 amount of the IRS's secured claim in the Chapter 13 bankruptcy. Based on the emails I am seeing below, there is misunderstanding among the Chapter 13 counsel, Debtors' counsel, and the bank's counsel that the secured claim and the lien are one and the same. They are not. 26 U.S.C. § 6321 provides, "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Thus, while the IRS's secured claim is in the amount of $19,977.04, that claim is secured by a lien on all of the Debtors' property pursuant to 26 U.S.C. § 6321 and multiple liens have been filed on the Debtors' property because they have been delinquent in their tax payments for multiple tax years. Even though the IRS's secured claim is for $19,977.04, that does not mean that is all to which the lien attached.

2. Attached are the Notices of Federal Tax Lien (NFTL) that have been filed and recorded (some of which are attached to the IRS's amended Proof of Claim, Claim 27-3). The unpaid tax liability reflected in NFTL (excluding accrued interest) is in the amount of $149,294.24. I am waiting to hear back from the IRS regarding the difference between the $149,294.24 and the lien payoff number of $272,476.97 to see if the difference of $123,182.73 is interest and penalties or something else. If something else, then there could be an error on the payoff letter. But again, the unpaid balance (exclusive of interest) is at least $149,294.24.

3. With respect to how the lien can be released, 26 U.S.C. § 6325(a)(1) provides, in relevant part, "Subject to such regulations as the Secretary may prescribe, the Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which—The Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become

legally unenforceable[.]" Publication 1450 is consistent with this statutory authority as is the general guidance I provided; either the lien needs to be paid off in full (the number that I seeking confirmation on) or the Debtors need to receive their Chapter 13 discharge.

Best,

Adine

 **Adine S. Momoh**
**Assistant United States Attorney**
Assistant United States Attorney and District of Minnesota Bankruptcy Coordinator
United States Attorney's Office for the District of Minnesota
600 United States Courthouse | 300 South Fourth Street | Minneapolis, MN 55415
Office 612.664.5617 | adine.momoh@usdoj.gov

**From:** Jeffrey Bruzek <jmb@ch13mn.com>
**Sent:** Tuesday, June 30, 2026 11:48 AM
**To:** Kevin Dobie <Kevin@minnesotamortgagelaw.com>; Momoh, Adine (USAMN) <Adine.Momoh@usdoj.gov>
**Cc:** Julie Benham <julie.benham@myflextitle.com>; Carolyn Hanson <carolyn@gibraltartitle.com>; Ashlie Ebner <ashlie.ebner@myflextitle.com>; Craig Andresen <Craig@AndresenLaw.com>
**Subject:** [EXTERNAL] RE: Golinvaux, 24-30007-KAC, closing, please respond

All-

My thoughts –

A. The IRS lien release for $272,000 can't be correct as the POC listed the lien value at $19,977.04. I assume the payoff is auto generated in some manner.

B. The plan provides that the trustee will pay the interest on that secured claim through month 32 (September 2026). We have paid $3591 out of the $4256, leaving a balance of $665. We didn't disburse in May or June due to the debtor's plan payments received when they were. So, there are five payments left on the interest, three scheduled in the future, one due out of the one month of plan payment we are holding for May (which the debtor paid in June) and one due out of the June payment not yet received.

C. The plan would have the IRS to release its lien on this property at 3360 WOOD DUCK DRIVE NW in exchange for a payment of $19,977.04. Part 16 addresses what happens at the sale of the property since part 9 provides that "unless otherwise

specified in part 16." Unless, I guess, the IRS thought it would receive a payment from the sale of real estate in which they had a lien but wasn't required to release its lien on this property unless it received $272,000.

Sincerely,

Jeffrey M. Bruzek
Counsel to the Chapter 13 Trustee
100 South Fifth Street, Suite 480
Minneapolis, MN 55402
Phone: 612-277-1223
Fax:   612-354-3380
E-mail: jmb@ch13mn.com

**ALL DOCUMENTS REQUESTED ARE TO BE REDACTED FOR PERSONALLY IDENTIFIABLE INFORMATION (PII) AND UPLOADED TO THE TRUSTEE'S DOCUMENT SUBMISSION PORTAL**

-
This communication is sensitive, confidential, may include matter subject to the attorney-client and/or attorney work product privileges, and is intended solely for the named addressee. If you are not the named addressee or a person responsible for delivering this communication to the named addressee, please notify the sender's office at the number above, then destroy this communication. We apologize in advance of any duplicate requests of you.

**From:** Kevin Dobie <Kevin@minnesotamortgagelaw.com>
**Sent:** Tuesday, June 30, 2026 10:50 AM
**To:** Momoh, Adine (USAMN) <Adine.Momoh@usdoj.gov>
**Cc:** Julie Benham <julie.benham@myflextitle.com>; Jeffrey Bruzek <jmb@ch13mn.com>; Carolyn Hanson <carolyn@gibraltartitle.com>; Ashlie Ebner <ashlie.ebner@myflextitle.com>; Craig Andresen <Craig@AndresenLaw.com>
**Subject:** RE: Golinvaux, 24-30007-KAC, closing, please respond

Hi Adine,

I'm a little confused about the IRS's position. If the IRS's secured claim amount is $19,977 plus interest, I don't understand how the IRS can condition a release of lien on payment of ~$272K. To me, the release of lien should be provided if the secured claim amount of $19,977 is paid in full. Unless I'm missing something, is it possible for you to tell the IRS folks that because they filed a secured claim of $19,977, they need to amend the payoff letter to that amount?

Kevin

Kevin T. Dobie | Partner
Liebo, Weingarden, Dobie & Barbee PLLP*
4500 Park Glen Road Suite 300
Minneapolis, MN 55416
952.491.7731 Phone (Direct)
952.925.6888 Phone (Office)
952.925.5879 Fax
kevin@MinnesotaMortgageLaw.com
www.MinnesotaMortgageLaw.com
*fka Usset, Weingarden & Liebo PLLP

Minnesota State Bar Association
Certified ▲ Specialist
Real Property Law

**Where required by law: This is a communication from a debt collector and any information will be used for that purpose.**

THIS MESSAGE (AND ANY ATTACHMENTS) IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS EXPLICITLY ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW, INCLUDING, BUT NOT LIMITED TO, THE ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C. SECTIONS 2510-2521. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via email at kevin@minnesotamortgagelaw.com or by telephone at 952-491-7731 and then permanently delete your copies. Thank you.

**From:** Momoh, Adine (USAMN) <Adine.Momoh@usdoj.gov>
**Sent:** Monday, June 29, 2026 2:00 PM
**To:** Carolyn Hanson <carolyn@gibraltartitle.com>; Craig Andresen <Craig@AndresenLaw.com>; Ashlie Ebner <ashlie.ebner@myflextitle.com>
**Cc:** Julie Benham <julie.benham@myflextitle.com>; Kevin Dobie <Kevin@minnesotamortgagelaw.com>; Jeffrey M. Bruzek <jmb@ch13mn.com>
**Subject:** [EXTERNAL] RE: Golinvaux, 24-30007-KAC, closing, please respond

Good afternoon, All:

I have spoken with and confirmed with the IRS that if the Debtors are only looking to pay the IRS's secured claim as pursuant to the confirmed modified plan, the amount to be paid is **$19,977 (see Parts 9.1 and 16.6 of the confirmed modified plan)**. The interest that continues to accrue on the IRS's secured claim (total amount of $4,256) is to be paid through the plan, not the sale of the home (the confirmed modified plan details this).

That said, please see the attached lien payoff statement from the IRS. This letter makes clear the amount that needs to be paid in full **if the Debtors are seeking to have the Federal Tax Lien released computed to July 13, 2026**. Absent the lien payoff being paid in full, the lien would only be released at the time of discharge when the Debtors make all of their plan payments.

Best,

Adine

**Adine S. Momoh**
**Assistant United States Attorney**
Assistant United States Attorney and District of Minnesota Bankruptcy Coordinator
United States Attorney's Office for the District of Minnesota
600 United States Courthouse | 300 South Fourth Street | Minneapolis, MN 55415
Office 612.664.5617 | adine.momoh@usdoj.gov

**From:** Carolyn Hanson <carolyn@gibraltartitle.com>
**Sent:** Friday, June 26, 2026 1:08 PM
**To:** Momoh, Adine (USAMN) <Adine.Momoh@usdoj.gov>; Craig Andresen <Craig@AndresenLaw.com>; Ashlie Ebner <ashlie.ebner@myflextitle.com>
**Cc:** Julie Benham <julie.benham@myflextitle.com>; Kevin Dobie <kevin@minnesotamortgagelaw.com>; Jeffrey M. Bruzek <jmb@ch13mn.com>
**Subject:** [EXTERNAL] RE: Golinvaux, 24-30007-KAC, closing, please respond

Thank you for the reply. I will need something to show the amount with interest.

Carolyn Hanson
Gibraltar Title
7825 Washington Avenue Suite 200
Bloomington, MN 55439
direct (952)392-7149
fax 952-830-1513
main line (952)830-1904
carolyn@gibraltartitle.com
send loan documents to loandocs@gibraltartitle.com
send title orders to orders@gibraltartitle.com

WARNING – FRAUDULENT FUNDING INSTRUCTIONS
Email hacking and fraud are on the rise to fraudulently misdirect funds. Please call your escrow officer immediately using contact information found from an independent source, such as the sales contract or internet, to verify any funding instructions

received. We are not responsible for any wires sent by you to an incorrect bank account.

**From:** Momoh, Adine (USAMN) <Adine.Momoh@usdoj.gov>
**Sent:** Friday, June 26, 2026 1:02 PM
**To:** Carolyn Hanson <carolyn@gibraltartitle.com>; Craig Andresen <Craig@AndresenLaw.com>; Ashlie Ebner <ashlie.ebner@myflextitle.com>
**Cc:** Julie Benham <julie.benham@myflextitle.com>; Kevin Dobie <kevin@minnesotamortgagelaw.com>; Jeffrey M. Bruzek <jmb@ch13mn.com>
**Subject:** RE: Golinvaux, 24-30007-KAC, closing, please respond

Good afternoon,

I am following these emails. As Craig noted, my name is Adine Momoh, and I am an Assistant United States Attorney for the District of Minnesota. I represent the United States of America and the Internal Revenue Service in the above-referenced matter. If it would be helpful for the title company to have a payoff statement from the IRS, I can try and work with the IRS to get that. However, given this short notice and with the weekend upon us, this could take a little time. Also, my prior IRS Bankruptcy Specialist on this file is no longer with the IRS, so I will need some time to find a new contact who can help me with this.

Please let me know.

In the meantime, I am trying to see who at the IRS can help with this.

Best,

Adine



**Adine S. Momoh**
**Assistant United States Attorney**
Assistant United States Attorney and District of Minnesota Bankruptcy Coordinator
United States Attorney's Office for the District of Minnesota
600 United States Courthouse | 300 South Fourth Street | Minneapolis, MN 55415
Office 612.664.5617 | adine.momoh@usdoj.gov

**From:** Carolyn Hanson <carolyn@gibraltartitle.com>
**Sent:** Friday, June 26, 2026 10:30 AM
**To:** Craig Andresen <Craig@AndresenLaw.com>; Ashlie Ebner <ashlie.ebner@myflextitle.com>
**Cc:** Julie Benham <julie.benham@myflextitle.com>; Momoh, Adine (USAMN) <Adine.Momoh@usdoj.gov>; Kevin Dobie <kevin@minnesotamortgagelaw.com>
**Subject:** [EXTERNAL] RE: Golinvaux, 24-30007-KAC, closing, please respond

I will need clarification on the amount that the IRS would accept as payment to release the lien on the property. Currently it is not clear to me. I would also need to have interest calculated for us to get a payment to them next week since it is Friday and an overnight address.

Carolyn Hanson
Gibraltar Title
7825 Washington Avenue Suite 200
Bloomington, MN 55439
direct (952)392-7149
fax 952-830-1513
main line (952)830-1904
carolyn@gibraltartitle.com
send loan documents to loandocs@gibraltartitle.com
send title orders to orders@gibraltartitle.com

WARNING – FRAUDULENT FUNDING INSTRUCTIONS
Email hacking and fraud are on the rise to fraudulently misdirect funds. Please call your escrow officer immediately using contact information found from an independent source, such as the sales contract or internet, to verify any funding instructions received. We are not responsible for any wires sent by you to an incorrect bank account.

**From:** Craig Andresen <Craig@AndresenLaw.com>
**Sent:** Friday, June 26, 2026 9:07 AM
**To:** Ashlie Ebner <ashlie.ebner@myflextitle.com>
**Cc:** Carolyn Hanson <carolyn@gibraltartitle.com>; Julie Benham <julie.benham@myflextitle.com>; Momoh, Adine (USAMN) <adine.momoh@usdoj.gov>; Kevin Dobie <kevin@minnesotamortgagelaw.com>
**Subject:** FW: Golinvaux, 24-30007-KAC, closing, please respond

Ashlie, I received the email message below earlier this morning. In this email, the Assistant U.S. Attorney assured me that the IRS would comply with its obligation as stated in Paragraph 9.1 of the attached chapter 13 plan. As we know, such plan states that the IRS will retain its lien on the real estate until payment of its secured claim in full, which payment will occur at the closing of the sale of the real property located at 3360 Wood Duck Drive N.W., and in the amount of $19,977.00. (The IRS has the right to

receive monthly interest of 8% per annum accruing after April 2025 to the extent the chapter 13 trustee has not yet paid such $133.00 monthly interest, however, the trustee has paid all such interest and only interest accruing after July would need to be paid at closing.) Accordingly, the IRS is obligated by the confirmed plan's Paragraph 9.1 and 16.6 to release its lien once full payment is made upon the secured claim. The provisions of a confirmed chapter 13 plan are binding upon the debtor and each creditor, which term includes the IRS, see 11 U.S.C. section 101(10). Please let me know if you have any questions. Thank you.

*Craig Andresen*

Craig W. Andresen, Attorney
3800 W. American Blvd., Suite 1500
Bloomington, MN 55431
(952) 831-1995
craig@andresenlaw.com
www.andresenlaw.com

**From:** Momoh, Adine (USAMN) <Adine.Momoh@usdoj.gov>
**Sent:** Friday, June 26, 2026 8:02 AM
**To:** Craig Andresen <Craig@AndresenLaw.com>
**Cc:** Jeffrey M. Bruzek <jmb@ch13mn.com>; Kevin Dobie <Kevin@minnesotamortgagelaw.com>
**Subject:** RE: Golinvaux, 24-30007-KAC, closing, please respond

Craig,
The Government will follow the terms of the plan, which has since been confirmed and is now subject to Court Order. Please share that plan and the confirmation order with the closing company as I am not sure why you or your clients think the Government would not follow the terms of these governing documents.

To seek any additional assurance from the Government borders on improper and inappropriate, and seems as though you or your clients are trying to put an obligation on the Government that extends beyond what the plan terms allow for.

Do you have any further questions about this?

And going forward, please be sure to cc the Chapter 13 Trustee's Office so they are aware of your communications regarding a critical term of the plan. I am also cc'ing Kevin Dobie as this sale term pertains to his client as well.

Best,

Adine



**Adine S. Momoh**
**Assistant United States Attorney**
Assistant United States Attorney and District of Minnesota Bankruptcy Coordinator
United States Attorney's Office for the District of Minnesota
600 United States Courthouse | 300 South Fourth Street | Minneapolis, MN 55415
Office 612.664.5617 | adine.momoh@usdoj.gov

**From:** Craig Andresen <Craig@AndresenLaw.com>
**Sent:** Friday, June 26, 2026 7:46 AM
**To:** Momoh, Adine (USAMN) <Adine.Momoh@usdoj.gov>
**Subject:** [EXTERNAL] Golinvaux, 24-30007-KAC, closing, please respond

Ms. Momoh, I have been contacted by the closing company people administering the closing of the Golinvaux's home. As most closings do, this one has several different actors, and numerous "moving parts" so to speak, and of course these moving parts must all line up in order for the closing of the sale to happen. In this Golinvaux sale, all other moving have successfully aligned, and the only hold up is the IRS and the question whether it will release all its liens fully once $19,977.00 has been paid as provided for by Paragraph 9.1 of the plan. From speaking with the closer, it is apparent to me that if your client does not either release the lien or provide some guidance, now, the closing will fall through and there will not be a sale. There are a lot of people involved in this sale, movers on both sides of course, a couple attempting to purchase the property and move into the 3360 Wood Duck Drive NW property, and all of these persons are waiting to know whether the IRS will release its liens upon payment of $19,977.00 as provided for by the plan. It would not be an exaggeration to say that there are substantial hopes and dreams riding on this sale, and riding on the willingness of the IRS to release its liens at this sale. If there is any answer you can provide, whether it be in the affirmative or not, that would be very helpful. If there is something preventing the IRS from concluding that it is bound by the plan to provide a release of all liens at this proposed sale, then by the same token, it would be extremely helpful to numerous persons if we could find out what that might be. We are hoping that both you and the IRS have now had sufficient time to look into this, and that the IRS can, at this time, provide an answer. We anxiously await your response. Thank you.

*Craig Andresen*

Craig W. Andresen, Attorney
3800 W. American Blvd., Suite 1500
Bloomington, MN 55431
(952) 831-1995
craig@andresenlaw.com
www.andresenlaw.com

EXHIBIT E

ENGEL&VÖLKERS®

# PURCHASE AGREEMENT

This form is approved by the Minnesota Association of REALTORS®, which disclaims any liability arising out of use or misuse of this form. © 2019-2025 Minnesota Association of REALTORS®

1. Date 05/18/2026
2. Page 1

BUYER (S): Kirsten Schmidt Jonathan Schmidt

Buyer's earnest money in the amount of Twenty two thousand, two hundred Dollars ($ 22,200) shall be delivered to listing broker, or, if checked, to ☐ ______ ("Earnest Money Holder") no later than two (2) Business Days after Final Acceptance Date. Buyer and Seller agree that earnest money shall be deposited in the trust account of Earnest Money Holder as specified above within three (3) Business Days of receipt of the earnest money or Final Acceptance Date, whichever is later.

Said earnest money is part payment for the purchase of the property located at

Street Address: 3360 Wood Duck Drive NW

City of Prior Lake, County of Scott,

State of Minnesota, Zip Code 55372, legally described as

SUBDIVISIONNAME WILDS 3RD ADDN,THE LOT 024 BLOCK 001 SUBDIVISIONCD 25337.

Said purchase shall include all improvements, fixtures, and appurtenances on the property, if any, including but not limited to, the following (collectively the "Property"): garden bulbs, plants, shrubs, trees, lawn watering systems, in-ground pet containment systems (excluding collars); sheds; playsets; storm sashes, storm doors, screens, and awnings; window shades and blinds; traverses, curtain and drapery rods, valances, draperies, curtains, and window coverings and treatments; towel rods; attached lighting and bulbs; fan fixtures; plumbing fixtures; garbage disposals; water softeners; water treatment systems; water heating systems; heating systems; air exchange systems; environmental remediation systems (e.g., radon, vapor intrusion); sump pumps; TV antennas, cable TV jacks and wiring, and TV wall mounts; wall and ceiling speaker mounts; carpeting; attached mirrors; garage door openers and all controls; smoke detectors; doorbells; thermostats; all integrated phone and home automation systems, including necessary components such as intranet and Internet connected hardware or devices, control units (other than non-dedicated mobile devices, electronics, and computers) and applicable software, permissions, passwords, codes, and access information; fireplace screens, doors, and heatilators; **ANY OF THE FOLLOWING, IF BUILT-IN:** dishwashers, refrigerators, wine and beverage refrigerators, trash compactors, ovens, cook-top stoves, warming drawers, microwave ovens, hood fans, shelving, work benches, intercoms, speakers, air conditioning equipment, electronic air filters, humidifiers and dehumidifiers, liquid fuel tanks and all controls, pool and spa equipment, propane tanks and all controls, security system equipment, TV satellite dishes; the above-mentioned inclusions **AND** the following personal property shall be transferred with no additional monetary value, and free and clear of all liens and encumbrances:

all kitchen appliances, washer & dryer as seen on 5/15/2026.

Notwithstanding the foregoing, leased fixtures are not included.

Notwithstanding the foregoing, the following item(s) are excluded from the purchase:

______.

## PURCHASE PRICE:

Seller has agreed to sell the Property to Buyer for the sum of ($ 745,000) Seven hundred forty five thousand Dollars, which Buyer agrees to pay in the following manner:

1. 20 percent (%) of the sale price in **CASH**, or more in Buyer's sole discretion, including earnest money;
2. 80 percent (%) of the sale price in **MORTGAGE FINANCING**. (See following Mortgage Financing section.)
3. ______ percent (%) of the sale price by **ASSUMING** Seller's current mortgage. (See attached *Addendum to Purchase Agreement: Assumption Financing*.)
4. ______ percent (%) of the sale price by **CONTRACT FOR DEED.** (See attached *Addendum to Purchase Agreement: Contract for Deed Financing*.)

## CLOSING DATE:

**The date of closing shall be** June 26, 2026.

Minnesota Realtors®

Property located at 3360 Wood Duck Drive NW, Prior Lake, MN 55372

## MORTGAGE FINANCING:

This Purchase Agreement ☑ **IS** ☐ **IS NOT** subject to the mortgage financing provisions below. If **IS**, complete the *(Check one.)* **MORTGAGE FINANCING** section below. If **IS NOT**, proceed to the **SELLER'S CONTRIBUTIONS TO BUYER'S COSTS** section.

Such mortgage financing shall be: *(Check one.)*

☑ **FIRST MORTGAGE only** ☐ **FIRST MORTGAGE AND SUBORDINATE FINANCING.**

Buyer shall apply for and secure, at Buyer's expense, a: *(Check all that apply.)*

☑ **CONVENTIONAL OR PRIVATELY INSURED CONVENTIONAL**

☐ **DEPARTMENT OF VETERANS' AFFAIRS ("DVA") GUARANTEED**

☐ **FEDERAL HOUSING ADMINISTRATION ("FHA") INSURED**

☐ **UNITED STATES DEPARTMENT OF AGRICULTURE ("USDA") RURAL DEVELOPMENT**

☐ **OTHER** ____________________

mortgage in the amount stated in this Purchase Agreement, amortized over a period of not more than 30 years, with an initial interest rate at no more than market percent (%) per annum. The mortgage application **IS TO BE MADE WITHIN FIVE (5) BUSINESS DAYS** after the Final Acceptance Date. Buyer agrees to use best efforts to secure a commitment for such financing and to execute all documents required to consummate said financing.

**LOCKING OF MORTGAGE INTEREST RATE ("RATE")**: The Rate shall be locked with the lender(s) by Buyer: *(Check one.)*

☐ **WITHIN FIVE (5) BUSINESS DAYS OF FINAL ACCEPTANCE DATE; OR**

☑ **AT ANY TIME PRIOR TO CLOSING OR AS REQUIRED BY LENDER(S).**

**MORTGAGE FINANCING CONTINGENCY:** This Purchase Agreement is contingent upon the following and applies to the first mortgage and any subordinate financing. *(Check one.)*

☑ If Buyer cannot secure the financing specified in this Purchase Agreement, and this Purchase Agreement does not close on the closing date specified, this Purchase Agreement is canceled. Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid here to be

☐ **REFUNDED TO BUYER** ☑ **FORFEITED TO SELLER.** *(Check one.)*

**NOTE:** If this Purchase Agreement is subject to DVA or FHA financing, **FORFEITED TO SELLER** may be prohibited. See the following DVA and FHA Escape Clauses.

OR

☐ Buyer shall provide Seller, or licensee representing or assisting Seller, with the Written Statement, on or before ____________________.

For purposes of this Contingency, **"Written Statement"** means a Written Statement prepared by Buyer's mortgage originator(s) or lender(s) after the Final Acceptance Date that Buyer is approved for the loan(s) specified in this Purchase Agreement, including both the first mortgage and any subordinate financing, if any, and stating that an appraisal, satisfactory to the lender(s), has been completed or the lender(s) has waived the appraisal and stating conditions required by lender(s) to close the loan.

Upon delivery of the Written Statement to Seller, or licensee representing or assisting Seller, the obligation for satisfying all conditions required by mortgage originator(s) or lender(s), except those conditions specified below, are deemed accepted by Buyer:

(a) work orders agreed to be completed by Seller;
(b) any other financing terms agreed to be completed by Seller here; and
(c) any contingency for the sale and closing of Buyer's property pursuant to this Purchase Agreement.

Minnesota
Realtors

Property located at 3360 Wood Duck Drive NW, Prior Lake, MN 55372.

Upon delivery of the Written Statement, if this Purchase Agreement does not close on the stated closing date for **ANY REASON** relating to financing, including, but not limited to interest rate and discount points, if any, then Seller may, at Seller's option, declare this Purchase Agreement canceled, in which case this Purchase Agreement is canceled. If Seller declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid here to be **FORFEITED TO SELLER** as liquidated damages. In the alternative, Seller may seek all other remedies allowed by law.

Notwithstanding the language in the preceding paragraph, Seller may not declare this Purchase Agreement canceled if the reason this Purchase Agreement does not close was due to:
(a) Seller's failure to complete work orders to the extent required by this Purchase Agreement;
(b) Seller's failure to complete any other financing terms agreed to be completed by Seller here; or
(c) any contingency for the sale and closing of Buyer's property pursuant to this Purchase Agreement, except as specified in the contingency for sale and closing of Buyer's property.

If the Written Statement is not provided by the date specified on line 82, Seller may, at Seller's option, declare this Purchase Agreement canceled by written notice to Buyer at any time prior to Seller receiving the Written Statement, in which case this Purchase Agreement is canceled. In the event Seller declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid here to be ☐ **RETAINED BY SELLER** ☐ **REFUNDED TO BUYER.**
*(Check one.)*

If the Written Statement is not provided, and Seller has not previously canceled this Purchase Agreement, this Purchase Agreement is canceled as of the closing date specified in this Purchase Agreement. Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid here to be ☐ **RETAINED BY SELLER** ☐ **REFUNDED TO BUYER.**
*(Check one.)*

**LENDER COMMITMENT WORK ORDERS:** Seller agrees to pay up to $ 0 to make repairs as required by the lender commitment. If the lender commitment is subject to any work orders for which the cost of making said repairs shall exceed this amount, Seller shall have the following options:
(a) making the necessary repairs; or
(b) negotiating the cost of making said repairs with Buyer; or
(c) declaring this Purchase Agreement canceled, in which case this Purchase Agreement is canceled. Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid here to be refunded to Buyer, unless Buyer provides for payment of the cost of said repairs or escrow amounts related thereto above the amount specified on line 117 of this Purchase Agreement.

☐ **SELLER** ☑ **BUYER** agrees to pay any reinspection fee required by Buyer's lender(s).
*(Check one.)*

**FHA ESCAPE CLAUSE (FHA Financing only):** "It is expressly agreed that, notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the Property described here or to incur any penalty by forfeiture of earnest money deposits or otherwise, unless the purchaser has been given in accordance with the Department of Housing and Urban Development ("HUD")/FHA or DVA requirements a written statement by the Federal Housing Commissioner, Department of Veterans' Affairs, or a Direct Endorsement lender setting forth the appraised value of the Property as not less than $ ____________ .
(sale price)

The purchaser shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage HUD will insure; HUD does not warrant the value nor the condition of the Property. The purchaser should satisfy himself/herself that the price and condition of the Property are acceptable."

Property located at 3360 Wood Duck Drive NW, Prior Lake, MN 55372.

**LENDER PROCESSING FEES (FHA, DVA Financing Only):** Seller agrees to pay Buyer's closing fees and miscellaneous processing fees which cannot be charged to Buyer, not to exceed $ ______. This amount is in addition to Seller's Contributions to Buyer's Costs, if applicable.

**DVA FUNDING FEE (DVA Financing only):** Pursuant to federal regulations, a one-time Funding Fee based on loan amount, not otherwise waived, must be paid at closing of this transaction as follows:

______ paid by Buyer ☐ **AT CLOSING** ☐ **ADDED TO MORTGAGE AMOUNT** *(Check one.)*

______ paid by Seller

**NOTE: DVA regulations limit the fees and charges Buyer can pay to obtain a DVA loan.**

**DEPARTMENT OF VETERANS' AFFAIRS ESCAPE CLAUSE (DVA Financing only):** "It is expressly agreed that, notwithstanding any other provisions of this contract, the purchaser shall not incur any penalty by forfeiture of earnest money or otherwise be obligated to complete the purchase of the Property described here, if the contract purchase price or cost exceeds the reasonable value of this Property established by the Department of Veterans' Affairs. The purchaser shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of reasonable value established by the Department of Veterans' Affairs."

**NOTE: Verify DVA requirements relating to payment of all special assessments levied and pending, and annual installments of special assessments certified to yearly taxes.**

**OTHER MORTGAGE FINANCING ITEMS:**

Buyer agrees to pay the full difference between the appraised value and the purchase price, in the event the property does not appraise at or above the purchase price.

## SELLER'S CONTRIBUTIONS TO BUYER'S COSTS:

Seller ☐ **IS** ☑ **IS NOT** *(Check one.)* contributing to Buyer's costs. If answer is **IS**, Seller agrees to pay at closing, up to: *(Check one.)*

☐ $ ______

☐ ______ percent (%) of the sale price

towards Buyer's closing fees, title service fees, title searches, title examinations, abstracting, lender's title insurance, owner's title insurance, prepaid items, other Buyer's costs allowable by lender, if any, and/or mortgage discount points. Any amount of Seller's contribution that exceeds Buyer's allowable costs, or which cannot be used because Seller's contribution exceeds the maximum Seller contribution allowed by law or by mortgage requirements, shall be retained by Seller.

**NOTE: The amount paid by Seller cannot exceed the maximum Seller contribution allowed by FHA, DVA, or lender. All funds paid by Seller on behalf of Buyer must be stated on the Closing Disclosure at closing.**

## INSPECTIONS:

Buyer has been made aware of the availability of Property inspections. Buyer ☑ **ELECTS** ☐ **DECLINES** *(Check one.)* to have a Property inspection performed at Buyer's expense.

This Purchase Agreement ☐ **IS** ☑ **IS NOT** *(Check one.)* contingent upon any inspection(s) of the Property obtained by Buyer to determine its condition, including any non-intrusive testing or any intrusive testing as allowed pursuant to this Purchase Agreement.

Any inspection(s) or test(s) shall be done by an inspector(s) or tester(s) of Buyer's choice. **Buyer shall satisfy Buyer as to the qualifications of the inspector(s) or tester(s).** For purposes of this Purchase Agreement, "intrusive testing" shall mean any testing, inspection(s), or investigation(s) that changes the Property from its original condition or otherwise damages the Property.

Seller ☐ **DOES** ☑ **DOES NOT** *(Check one.)* agree to allow Buyer to perform intrusive testing or inspection(s).

If answer is **DOES**, Buyer agrees that the Property shall be returned to the same condition it was in prior to Buyer's intrusive testing at Buyer's sole expense.

Minnesota Realtors®

## PURCHASE AGREEMENT

Property located at 3360 Wood Duck Drive NW, Prior Lake, MN 55372

Seller will provide access to attic(s) and crawlspace(s).

Within 5 Calendar Days of Final Acceptance Date, all inspection(s), test(s), and resulting negotiations, if any, shall be done ("Inspection Period").

If this Purchase Agreement is contingent upon inspection, Buyer may cancel this Purchase Agreement based on the inspection(s) or test result(s) by providing written notice to Seller, or licensee representing or assisting Seller, of Buyer's election to cancel no later than the end of the Inspection Period. If Buyer cancels this Purchase Agreement, then the Purchase Agreement is canceled. Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid here to be refunded to Buyer. If Buyer does not cancel this Purchase Agreement before the end of the Inspection Period, then this Inspection Contingency shall be deemed removed and this Purchase Agreement shall be in full force and effect.

**OTHER INSPECTION ITEMS:**

## SALE OF BUYER'S PROPERTY:

*(Check one.)*

☐ 1. This Purchase Agreement is subject to an *Addendum to Purchase Agreement: Sale of Buyer's Property Contingency* for the sale of Buyer's property. (If checked, see attached *Addendum*.)

OR

☐ 2. This Purchase Agreement is contingent upon the successful closing on the Buyer's property located at ______________________, which is scheduled to close on ______________________ pursuant to a fully executed purchase agreement. If Buyer's property does not close by the closing date specified in this Purchase Agreement, this Purchase Agreement is canceled. Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid here to be refunded to Buyer. The language in this paragraph supersedes any other provision to the contrary in any financing contingency made a part of this Purchase Agreement, if applicable.

OR

☑ 3. Buyer represents that Buyer has the financial ability to perform on this Purchase Agreement without the sale and closing on any other property.

## REAL ESTATE TAXES/SPECIAL ASSESSMENTS:

**REAL ESTATE TAXES:** Seller shall pay on the date of closing all real estate taxes due and payable in all prior years including all penalties and interest.

Buyer shall pay ☑ **PRORATED FROM DAY OF CLOSING** ☐ **ALL** ☐ **NONE** ☐ ______ **/12ths OF** real estate taxes *(Check one.)* due and payable in the year of closing.

Seller shall pay ☑ **PRORATED TO DAY OF CLOSING** ☐ **ALL** ☐ **NONE** ☐ ______ **/12ths OF** real estate taxes due and *(Check one.)* payable in the year of closing.

If the Property tax status is a part- or non-homestead classification in the year of closing, Seller ☐ **SHALL** ☑ **SHALL NOT** *(Check one.)* pay the difference between the homestead and non-homestead.

Buyer shall pay real estate taxes due and payable in the year following closing and thereafter, the payment of which is not otherwise here provided. No representations are made concerning the amount of subsequent real estate taxes.



Property located at 3360 Wood Duck Drive NW, Prior Lake, MN 55372

**DEFERRED TAXES/SPECIAL ASSESSMENTS:**

☐ **BUYER SHALL PAY** ☑ **SELLER SHALL PAY** *(Check one.)* on date of closing any deferred real estate taxes (e.g., Green Acres) or special assessments, payment of which is required as a result of the closing of this sale.

☑ **BUYER AND SELLER SHALL PRORATE AS OF THE DATE OF CLOSING** ☐ **SELLER SHALL PAY ON DATE OF CLOSING** *(Check one.)* all installments of special assessments certified for payment, with the real estate taxes due and payable in the year of closing.

☑ **BUYER SHALL ASSUME** ☐ **SELLER SHALL PAY** *(Check one.)* on date of closing all other special assessments levied as of the Date of this Purchase Agreement. Notwithstanding the foregoing, Buyer shall assume any levied assessments that cannot be paid in the year of closing.

☑ **BUYER SHALL ASSUME** ☐ **SELLER SHALL PROVIDE FOR PAYMENT OF** *(Check one.)* special assessments pending as of the Date of this Purchase Agreement for improvements that have been ordered by any assessing authorities. (Seller's provision for payment shall be by payment into escrow of two (2) times the estimated amount of the assessments or less, as required by Buyer's lender.)

Buyer shall pay any unpaid special assessments payable in the year following closing and thereafter, the payment of which is not otherwise here provided.

As of the Date of this Purchase Agreement, Seller represents that Seller ☑ **HAS** ☐ **HAS NOT** *(Check one.)* received a notice regarding any new improvement project from any assessing authorities, the costs of which project may be assessed against the Property. Any such notice received by Seller after the Date of this Purchase Agreement and before closing shall be provided to Buyer immediately. If such notice is issued after the date of this Purchase Agreement and on or before the date of closing, then the parties may agree in writing, on or before the date of closing, to pay, provide for the payment of, or assume the special assessments. In the absence of such agreement, either party may declare this Purchase Agreement canceled by written notice to the other party, or licensee representing or assisting the other party, in which case this Purchase Agreement is canceled. If either party declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid here to be refunded to Buyer.

## ADDITIONAL PROVISIONS:

**PREVIOUSLY EXECUTED PURCHASE AGREEMENT:** This Purchase Agreement ☐ **IS** ☑ **IS NOT** *(Check one.)* subject to cancellation of a previously executed purchase agreement dated ______________________.

(If answer is **IS**, said cancellation shall be obtained no later than ______________________. If said cancellation is not obtained by said date, this Purchase Agreement is canceled. Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid here to be refunded to Buyer.)

**DEED/MARKETABLE TITLE:** Upon performance by Buyer, Seller shall deliver a: *(Check one.)*

☑ **WARRANTY DEED** ☐ **PERSONAL REPRESENTATIVE'S DEED** ☐ **CONTRACT FOR DEED** ☐ **TRUSTEE'S DEED**

☐ **OTHER:** ______________________ **DEED** joined in by spouse, if any, conveying marketable title, subject to

(a) building and zoning laws, ordinances, and state and federal regulations;

(b) restrictions relating to use or improvement of the Property without effective forfeiture provisions;

(c) reservation of any mineral rights by the State of Minnesota;

(d) utility and drainage easements which do not interfere with existing improvements;

(e) rights of tenants as follows (unless specified, not subject to tenancies): ______________________

______________________; and

(f) others (must be specified in writing): ______________________

______________________.

Minnesota Realtors®

Property located at 3360 Wood Duck Drive NW, Prior Lake, MN 55372.

**POSSESSION**: Seller shall deliver possession of the Property: *(Check one.)*

☑ **IMMEDIATELY AFTER CLOSING**; or

☐ **OTHER:** ______________________.

Seller agrees to remove ALL DEBRIS AND ALL PERSONAL PROPERTY NOT INCLUDED HERE from the Property by possession date.

**LINKED DEVICES:** Seller warrants that Seller shall permanently disconnect or discontinue Seller's access or service to any device or system on or serving the property that is connected or controlled wirelessly, via internet protocol ("IP") to a router or gateway or directly to the cloud no later than delivery of possession as specified in this Purchase Agreement.

**PRORATIONS:** All interest; unit owners' association dues; rents; and charges for city water, city sewer, electricity, and natural gas shall be prorated between the parties as of date of closing. Buyer shall pay Seller for remaining gallons of fuel oil or liquid petroleum gas on the day of closing, at the rate of the last fill by Seller.

**TITLE AND EXAMINATION:** As quickly as reasonably possible after Final Acceptance Date:

(a) Seller shall deliver any abstract of title and a copy of any owner's title insurance policy for the Property, if in Seller's possession or control, to Buyer or Buyer's designated title service provider. Any abstract of title or owner's title insurance policy provided shall be immediately returned to Seller, or licensee representing or assisting Seller, upon cancellation of this Purchase Agreement; and

(b) Buyer shall obtain the title services determined necessary or desirable by Buyer or Buyer's lender, including but not limited to title searches, title examinations, abstracting, a title insurance commitment, or an attorney's title opinion at Buyer's selection and cost and provide a copy to Seller.

Seller shall use Seller's best efforts to provide marketable title by the date of closing. Seller agrees to pay all costs and fees necessary to convey marketable title including obtaining and recording all required documents, subject to the following:

In the event Seller has not provided marketable title by the date of closing, Seller shall have an additional thirty (30) days to make title marketable, or in the alternative, Buyer may waive title defects by written notice to Seller. In addition to the thirty (30)-day extension, Buyer and Seller may, by mutual agreement, further extend the closing date. Lacking such extension, either party may declare this Purchase Agreement canceled by written notice to the other party, or licensee representing or assisting the other party, in which case this Purchase Agreement is canceled. If either party declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid here to be refunded to Buyer.

**SUBDIVISION OF LAND, BOUNDARIES, AND ACCESS:** If this sale constitutes or requires a subdivision of land owned by Seller, Seller shall pay all subdivision expenses and obtain all necessary governmental approvals. Seller warrants that the legal description of the real property to be conveyed has been or shall be approved for recording as of the date of closing. Seller warrants that the buildings are or shall be constructed entirely within the boundary lines of the Property. Seller warrants that there is a right of access to the Property from a public right-of-way.

**MECHANIC'S LIENS:** Seller warrants that prior to the closing, payment in full will have been made for all labor, materials, machinery, fixtures, or tools furnished within the 120 days immediately preceding the closing in connection with construction, alteration, or repair of any structure on, or improvement to, the Property.

**NOTICES:** Seller warrants that Seller has not received any notice from any governmental authority as to condemnation proceedings, or violation of any law, ordinance, or regulation. If the Property is subject to restrictive covenants, Seller warrants that Seller has not received any notice from any person or authority as to a breach of the covenants. Any such notices received by Seller shall be provided to Buyer immediately. Discriminatory restrictive covenants (e.g. provisions against conveyance of property to any person of a specified religious faith, creed, national origin, race, or color) are illegal and unenforceable. An owner of real property may permanently remove such restrictive covenants from the title by recording a statutory form in the office of the county recorder of any county where the property is located.

**DIMENSIONS:** Buyer acknowledges any dimensions, square footage, or acreage of land or improvements provided by Seller, third party, or broker representing or assisting Seller are approximate. Buyer shall verify the accuracy of information to Buyer's satisfaction, if material, at Buyer's sole cost and expense.

**ACCESS AGREEMENT:** Seller agrees to allow reasonable access to the Property for performance of any surveys or inspections agreed to here.

323. Property located at 3360 Wood Duck Drive NW, Prior Lake, MN 55372.

**RISK OF LOSS:** If there is any loss or damage to the Property between the Date of this Purchase Agreement and the date of closing for any reason, including fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be on Seller. If the Property is destroyed or substantially damaged before the closing date, this Purchase Agreement is canceled, at Buyer's option, by written notice to Seller or licensee representing or assisting Seller. If Buyer cancels this Purchase Agreement, Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid here to be refunded to Buyer.

**TIME OF ESSENCE:** Time is of the essence in this Purchase Agreement.

**CALCULATION OF DAYS:** Any calculation of days begins on the first day (Calendar or Business Days as specified) following the occurrence of the event specified and includes subsequent days (Calendar or Business Days as specified) ending at 11:59 P.M. on the last day.

**BUSINESS DAYS:** "Business Days" are days which are not Saturdays, Sundays, or state or federal holidays unless stated elsewhere by the parties in writing.

**CALENDAR DAYS:** "Calendar Days" include Saturdays, Sundays, and state and federal holidays. For purposes of this Agreement, any reference to "days" means "Calendar Days" unless otherwise required by law.

**RELEASE OF EARNEST MONEY:** Buyer and Seller agree that the Earnest Money Holder shall release earnest money from the Earnest Money Holder's trust account:

(a) at or upon the successful closing of the Property;

(b) pursuant to written agreement between the parties, which may be reflected in a *Cancellation of Purchase Agreement* executed by both Buyer and Seller;

(c) upon receipt of an affidavit of a cancellation under MN Statute 559.217; or

(d) upon receipt of a court order.

**DEFAULT:** If Buyer defaults in any of the agreements here, Seller may cancel this Purchase Agreement, and any payments made here, including earnest money, shall be retained by Seller as liquidated damages and Buyer and Seller shall affirm the same by a written cancellation agreement.

If Buyer defaults in any of the agreements here, Seller may terminate this Purchase Agreement under the provisions of either MN Statute 559.21 or MN Statute 559.217, whichever is applicable. If either Buyer or Seller defaults in any of the agreements here or there exists an unfulfilled condition after the date specified for fulfillment, either party may cancel this Purchase Agreement under MN Statute 559.217, Subd. 3. Whenever it is provided here that this Purchase Agreement is canceled, said language shall be deemed a provision authorizing a Declaratory Cancellation under MN Statute 559.217, Subd. 4.

If this Purchase Agreement is not canceled or terminated as provided here, Buyer or Seller may seek actual damages for breach of this Purchase Agreement or specific performance of this Purchase Agreement; and, as to specific performance, such action must be commenced within six (6) months after such right of action arises.

**NOTICE REGARDING PREDATORY OFFENDER INFORMATION: Information regarding the predatory offender registry and persons registered with the predatory offender registry under MN Statute 243.166 may be obtained by contacting the local law enforcement offices in the community where the Property is located or the Minnesota Department of Corrections at (651) 361-7200, or from the Department of Corrections web site at https://coms.doc.state.mn.us/publicregistrantsearch.**

**BUYER HAS THE RIGHT TO A WALK-THROUGH REVIEW OF THE PROPERTY PRIOR TO CLOSING TO ESTABLISH THAT THE PROPERTY IS IN SUBSTANTIALLY THE SAME CONDITION AS OF THE DATE OF THIS PURCHASE AGREEMENT.**

BUYER HAS RECEIVED A: *(Check any that apply.)* ☑ ***DISCLOSURE STATEMENT: SELLER'S PROPERTY DISCLOSURE STATEMENT*** OR A ☐ ***DISCLOSURE STATEMENT: SELLER'S DISCLOSURE ALTERNATIVES*** FORM.

**DESCRIPTION OF PROPERTY CONDITION:** See *Disclosure Statement: Seller's Property Disclosure Statement* or *Disclosure Statement: Seller's Disclosure Alternatives* for description of disclosure responsibilities and limitations, if any.

**BUYER HAS RECEIVED THE INSPECTION REPORTS, IF REQUIRED, BY MUNICIPALITY.**

BUYER IS NOT RELYING ON ANY ORAL REPRESENTATIONS REGARDING THE CONDITION OF THE PROPERTY AND ITS CONTENTS.

Minnesota Realtors®

# PURCHASE AGREEMENT

 Date 05/18/2026

Property located at 3360 Wood Duck Drive NW, Prior Lake, MN 55372.

***(Check appropriate boxes.)***

SELLER WARRANTS THAT THE PROPERTY IS EITHER DIRECTLY OR INDIRECTLY CONNECTED TO:

**CITY SEWER ☑ YES ☐ NO / CITY WATER ☑ YES ☐ NO**

**SUBSURFACE SEWAGE TREATMENT SYSTEM**

SELLER ☐ **DOES** ☑ **DOES NOT** *(Check one.)* KNOW OF A SUBSURFACE SEWAGE TREATMENT SYSTEM ON OR SERVING THE PROPERTY. (If answer is **DOES**, and the system does not require a state permit, see *Disclosure Statement: Subsurface Sewage Treatment System*.)

**PRIVATE WELL**

SELLER ☐ **DOES** ☑ **DOES NOT** *(Check one.)* KNOW OF A WELL ON OR SERVING THE PROPERTY. (If answer is **DOES** and well is located on the Property, see *Disclosure Statement: Well*.)

THIS PURCHASE AGREEMENT ☐ **IS** ☑ **IS NOT** *(Check one.)* SUBJECT TO AN *ADDENDUM TO PURCHASE AGREEMENT: SUBSURFACE SEWAGE TREATMENT SYSTEM AND WELL INSPECTION CONTINGENCY*. (If answer is **IS**, see attached *Addendum*.)

**IF A WELL OR SUBSURFACE SEWAGE TREATMENT SYSTEM EXISTS ON THE PROPERTY, BUYER HAS RECEIVED A *DISCLOSURE STATEMENT: WELL* AND/OR A *DISCLOSURE STATEMENT: SUBSURFACE SEWAGE TREATMENT SYSTEM*.**

**HOME PROTECTION/WARRANTY PLAN:** Buyer and Seller are advised to investigate the various home protection/warranty plans available for purchase. Different home protection/warranty plans have different coverage options, exclusions, limitations, and service fees. Most plans exclude pre-existing conditions. *(Check one.)*

☐ A Home Protection/Warranty Plan will be obtained by ☐ **BUYER** ☐ **SELLER** *(Check one.)* and paid for by ☐ **BUYER** ☐ **SELLER** *(Check one.)* to be issued by ______________________ at a cost not to exceed $ ______________.

☑ No Home Protection/Warranty Plan is negotiated as part of this Purchase Agreement. However, Buyer may elect to purchase a Home Protection/Warranty Plan.

**AGENCY NOTICE**

Laura Sima (Licensee) is ☐ **Seller's Agent** ☑ **Buyer's Agent** ☐ **Dual Agent** ☐ **Facilitator**. *(Check one.)*

Engel & Volkers Lake Minnetonka (Real Estate Company Name)

Daniel Desrochers (Licensee) is ☑ **Seller's Agent** ☐ **Buyer's Agent** ☐ **Dual Agent** ☐ **Facilitator**. *(Check one.)*

eXp Realty (Real Estate Company Name)

**THIS NOTICE DOES NOT SATISFY MINNESOTA STATUTORY AGENCY DISCLOSURE REQUIREMENTS.**

**SELLER'S CONTRIBUTION TO BUYER'S BROKER'S COMPENSATION:** Seller agrees to pay buyer's broker's compensation at closing 2.7 percent (%) of the selling price or $ ______________ whichever is greater. This is in addition to any Seller's contribution to Buyer's closing costs paid at closing. This amount is in addition to the listing broker's offer of cooperating compensation, if any.

Minnesota Realtors®

Property located at 3360 Wood Duck Drive NW, Prior Lake, MN 55372.

## DUAL AGENCY REPRESENTATION

**PLEASE CHECK _ONE_ OF THE FOLLOWING SELECTIONS:**

☑ Dual Agency representation ***DOES NOT*** apply in this transaction. *Do not complete lines 414–430.*

☐ Dual Agency representation ***DOES*** apply in this transaction. *Complete the disclosure in lines 415-430.*

Broker represents both the Seller(s) and the Buyer(s) of the Property involved in this transaction, which creates a dual agency. This means that Broker and its salespersons owe fiduciary duties to both Seller(s) and Buyer(s). Because the parties may have conflicting interests, Broker and its salespersons are prohibited from advocating exclusively for either party. Broker cannot act as a dual agent in this transaction without the consent of both Seller(s) and Buyer(s). Seller(s) and Buyer(s) acknowledge that

(1) confidential information communicated to Broker which regards price, terms, or motivation to buy or sell will remain confidential unless Seller(s) or Buyer(s) instructs Broker in writing to disclose this information. Other information will be shared;

(2) Broker and its salespersons will not represent the interest of either party to the detriment of the other; and

(3) within the limits of dual agency, Broker and its salespersons will work diligently to facilitate the mechanics of the sale.

With the knowledge and understanding of the explanation above, Seller(s) and Buyer(s) authorize and instruct Broker and its salesperson to act as dual agents in this transaction.

Seller ____________________ Buyer ____________________

Seller ____________________ Buyer ____________________

Date ____________________ Date ____________________

**CLOSING COSTS:** Buyer or Seller may be required to pay certain closing costs, which may effectively increase the cash outlay at closing or reduce the proceeds from the sale.

**SETTLEMENT STATEMENT:** Buyer and Seller authorize the title company, escrow agent, and/or their representatives to disclose and provide copies of the disbursing agent's settlement statement to the real estate licensees involved in the transaction at the time these documents are provided to Buyer and Seller.

**FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Section 1445 of the Internal Revenue Code provides that a transferee ("Buyer") of a United States real property interest must be notified in writing and must withhold tax if the transferor ("Seller") is a foreign person and no exceptions from FIRPTA withholding apply. Buyer and Seller agree to comply with FIRPTA requirements under Section 1445 of the Internal Revenue Code.

Seller shall represent and warrant, under the penalties of perjury, whether Seller is a "foreign person" (as the same is defined within FIRPTA), prior to closing. Any representations made by Seller with respect to this issue shall survive the closing and delivery of the deed.

Buyer and Seller shall complete, execute, and deliver, on or before closing, any instrument, affidavit, or statement reasonably necessary to comply with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or Social Security numbers.

Due to the complexity and potential risks of failing to comply with FIRPTA, including the Buyer's responsibility for withholding the applicable tax, Buyer and Seller should **seek appropriate legal and tax advice regarding FIRPTA compliance, as the respective licensee's representing or assisting either party will be unable to assure either party whether the transaction is exempt from FIRPTA withholding requirements.**

Minnesota Realtors®

Property located at 3360 Wood Duck Drive NW, Prior Lake, MN 55372.

**FULLY EXECUTED PURCHASE AGREEMENT AND FINAL ACCEPTANCE:** To be binding, this Purchase Agreement and all addenda must be fully executed by both parties and a copy must be delivered.

**ELECTRONIC SIGNATURES:** The parties agree the electronic signature of any party on any document related to this transaction constitute valid, binding signatures.

**ENTIRE AGREEMENT:** This Purchase Agreement and all addenda and amendments signed by the parties shall constitute the entire agreement between Buyer and Seller. Any other written or oral communication between Buyer and Seller, including, but not limited to, e-mails, text messages, or other electronic communications are not part of this Purchase Agreement. This Purchase Agreement can be modified or canceled only in writing signed by Seller and Buyer or by operation of law. All monetary sums are deemed to be United States currency for purposes of this Purchase Agreement.

**SURVIVAL:** All warranties specified in this Purchase Agreement shall survive the delivery of the deed or contract for deed.

**DATE OF THIS PURCHASE AGREEMENT:** Date of this Purchase Agreement to be defined as the date on line one (1) of this Purchase Agreement.

**OTHER:**

Buyer to contribute $18,000 towards Sellers' closing costs at closing as an additional benefit to Seller, separate from and in addition to the Purchase Price.

**ADDENDA: The following addenda are attached and made a part of this Purchase Agreement.**

**NOTE: Disclosures and optional Arbitration Agreement are not part of this Purchase Agreement.**

- ☐ *Addendum to Purchase Agreement*
- ☐ *Addendum to Purchase Agreement: Additional Signatures*
- ☐ *Addendum to Purchase Agreement: Assumption Financing*
- ☐ *Addendum to Purchase Agreement: Buyer Move-In Agreement*
- ☐ *Addendum to Purchase Agreement: Buyer Purchasing "As Is" and Limitation of Seller Liability*
- ☐ *Addendum to Purchase Agreement: Condominium/Townhouse/Cooperative Common Interest Community ("CIC")*
- ☐ *Addendum to Purchase Agreement: Contract for Deed Financing*
- ☐ *Addendum to Purchase Agreement: Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards*
- ☐ *Addendum to Purchase Agreement: Sale of Buyer's Property Contingency*
- ☐ *Addendum to Purchase Agreement: Seller's Rent Back Agreement*
- ☐ *Addendum to Purchase Agreement: Seller's Purchase/Lease Contingency*
- ☐ *Addendum to Purchase Agreement: Short Sale Contingency*
- ☐ *Addendum to Purchase Agreement: Subsurface Sewage Treatment System and Well Water Inspection Contingency*
- ☐ Other: ______

Minnesota Realtors®

## PURCHASE AGREEMENT

Page 12 Date 05/18/2026

Property located at 3360 Wood Duck Drive NW, Prior Lake, MN 55372.

I agree to sell the Property for the price and on the terms and conditions set forth above. **I have reviewed all pages of this Purchase Agreement.**

I agree to purchase the Property for the price and on the terms and conditions set forth above. **I have reviewed all pages of this Purchase Agreement.**

☐ **If checked, this Purchase Agreement is subject to attached *Addendum to Purchase Agreement: Counteroffer* and the Final Acceptance Date shall be noted on the *Addendum*.**

**FIRPTA**: Seller represents and warrants, under penalty of perjury, that Seller ☐ **IS** ☑ **IS NOT** a foreign person (i.e., a *(Check one.)* non-resident alien individual, foreign corporation, foreign partnership, foreign trust, or foreign estate for purposes of income taxation. (*See lines 436-449.*)) This representation and warranty shall survive the closing of the transaction and the delivery of the deed.

X Signed on Click by: Richard J Golinvaux 05/19/2026 CLhBgvBpwcPe7BF...
(Seller's Signature) (Date)

X Kirsten Schmidt dotloop verified 05/18/26 6:38 PM CDT O4EE-S2DX-ZOPN-ZXXH
(Buyer's Signature) (Date)

X Richard J Golinvaux
(Seller's Printed Name)

X Kirsten Schmidt
(Buyer's Printed Name)

X Signed on Click by: Renee K Golinvaux 05/19/2026 CL5a9RoNMQRkyQ8...
(Seller's Signature) (Date)

X Jonathan Schmidt dotloop verified 05/18/26 6:37 PM CDT HKZQ-BGXT-JPSY-IBSP
(Buyer's Signature) (Date)

X Renee K Golinvaux
(Seller's Printed Name)

X Jonathan Schmidt
(Buyer's Printed Name)

**FINAL ACCEPTANCE DATE:** 05/19/2026 The Final Acceptance Date is the date on which the fully executed Purchase Agreement is delivered.

**THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).**
**IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

**I ACKNOWLEDGE THAT I HAVE RECEIVED AND HAVE HAD THE OPPORTUNITY TO REVIEW THE *DISCLOSURE STATEMENT: ARBITRATION DISCLOSURE AND RESIDENTIAL REAL PROPERTY ARBITRATION AGREEMENT*, WHICH IS AN OPTIONAL, VOLUNTARY AGREEMENT SEPARATE FROM THIS PURCHASE AGREEMENT.**

**SELLER(S)** Signed on Click by: Richard J Golinvaux CLhBgvBpwcPe7BF...
**BUYER(S)** Jonathan Schmidt dotloop verified 05/18/26 6:37 PM CDT OTKH-Y5RG-MWBG-MMZG

**SELLER(S)** Signed on Click by: Renee K Golinvaux CL5a9RoNMQRkyQ8...
**BUYER(S)** Kirsten Schmidt dotloop verified 05/18/26 6:38 PM CDT ZHDF-W9AC-PZWI-1RNF

Minnesota Realtors®

EXHIBIT F

American Land Title Association

ALTA Settlement Statement - Seller
Adopted 05-01-2015

**Flex Title Company, LLC**
**ALTA Universal ID: 1224371**
**11314 86th Ave N**
**Maple Grove, MN 55369**

File No./Escrow No.: MN2605-1557
Print Date & Time: June 30, 2026 7:44 am
Officer/Escrow Officer: Julie Benham
Settlement Location: 11314 86th Ave N
Maple Grove, MN 55369

Property Address: 3360 Wood Duck Drive NW
Prior Lake, MN 55372

Borrower: Jonathan Schmidt and Kirsten Schmidt

Seller: Richard J. Golinvaux and Renee K. Golinvaux
3360 Wood Duck Drive NW
Prior Lake, MN 55372

Settlement Date : July 03, 2026
Disbursement Date : July 03, 2026

ESTIMATED

| Description | Seller | |
|---|---|---|
| | Debit | Credit |
| **Financial** | | |
| Sale Price of Property | | 745,000.00 |
| | | |
| **Prorations/Adjustments** | | |
| Buyer to contribute towards Sellers' closing costs | | 18,000.00 |
| County Taxes 07/01/26-07/02/26 | 41.42 | |
| Quarterly HOA Dues 07/03/26-09/30/26 | 176.09 | |
| | | |
| **Title Charges and Escrow/Settlement Charges** | | |
| Payoff Handling Fee to Gibraltar Title | 250.00 | |
| Proceeds Handling Fee to Gibraltar Title | 0.00 | |
| Closing Fee - Seller to Flex Title Company, LLC | 600.00 | |
| Processing Fee to Flex Title Company, LLC | 175.00 | |
| Title- Recording Service Fee to Gibraltar Title | 100.00 | |
| HOA Reimbursement to Flex Title Company, LLC | 156.00 | |
| | | |
| **Commissions** | | |
| Broker Admin Fee to eXp Realty | 649.00 | |

Copyright 2015 American Land Title Association
All rights reserved

| Description | Seller | |
|---|---|---|
| | Debit | Credit |
| **Commissions (continued)** | | |
| Commission - Listing Agent 2.7% to eXp Realty | 20,115.00 | |
| Commission - Selling Agent 2.7% to Engel & Volkers Minneapolis Downtown | 20,115.00 | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Conservation Fee to Scott County Recorder | 5.00 | |
| Record Release of Tax Liens to Scott County Recorder | 92.00 | |
| State Deed Tax to Scott County Recorder | 2,458.50 | |
| | | |
| **Payoffs** | | |
| Payoff of First Mortgage Loan to Carrington Mortgage Services | 500,199.14 | |
| Payoff of Second Mortgage Loan to Carrington Mortgage Services | 159,381.12 | |
| | | |
| **Miscellaneous** | | |
| Property Taxes - First Half 2026<br>$3,811.00 paid outside closing by Seller | | |
| Current Water Bill to City of Prior Lake | 0.00 | |
| Estimated Final Water Bill to City of Prior Lake | 250.00 | |
| Home Warranty to Cinch Home Services | 648.00 | |
| Homeowners Association - Legacy Account Closing Fee to Associa Minnesota | 150.00 | |
| Reimburse DRG for Warranty call to DRG | 200.00 | |
| State Tax Lien payment to MN Department of Revenue | 42,756.52 | |
| IRS to IRS | 19,977.00 | |
| | **Debit** | **Credit** |
| **Subtotals** | 768,494.79 | 763,000.00 |
| **Due from Seller** | | 5,494.79 |
| **Totals** | 768,494.79 | 768,494.79 |

ESTIMATED

Copyright 2015 American Land Title Association
All rights reserved

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Flex Title Company, LLC to cause the funds to be disbursed in accordance with this statement.

Seller

____________________________________
Richard J. Golinvaux

____________________________________
Renee K. Golinvaux

Flex Title Company, LLC

BY:________________________________
Julie Benham
Executive Closer

ESTIMATED

Copyright 2015 American Land Title Association
All rights reserved

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In re:

Richard John Golinvaux, and
Renee Karen Golinvaux,

Debtors.

**Case No. 24-30007-KAC**
Chapter 13

ORDER ON MOTION OF DEBTORS TO COMPEL RELEASE OF LIEN

---

The above entitled matter came on before the court for hearing on July 8, 2026, on the motion of the debtors for expedited relief against the Internal Revenue Service. The court finds that in these circumstances, expedited relief is appropriate pursuant to Local Rule 9006-1(d). The court also finds that the Internal Revenue Service has failed to abide by the terms of the order confirming the plan, and failed to conform its conduct to the terms of the plan. The Internal Revenue Service is ordered to take reasonable steps to facilitate the closing of the sale of the Wood Duck Drive real estate, including providing an estimate of the amount of its secured claim to the parties requesting such information, or in the alternative, making clear that its secured claim is the claim found in Paragraph 9.1 of the confirmed plan, to-wit, $19,977.00 plus 8% interest. The debtors may move the court for further relief seven days after the date of this order.

IT IS SO ORDERED.

Date:_______________

_________________________________
Katherine A. Constantine
Chief United States Bankruptcy Judge